Aaron HENRY, National Association for the Advancement of Colored People (NAACP), Mississippi State Conference of the NAACP, and Coahoma Branch of the NAACP State Conference

v.

FIRST NATIONAL BANK OF CLARKSDALE; Claiborne Hardware Company, Inc.; Q.H. McDaniel, Jr., doing business as McDaniel Pharmacy; James E. Hudson and George Hudson, doing business as Hudson Bros.; Waddy Abraham, doing business as Jitney Jungle; Joe Ellis, Mrs. Ben Mullin and Miss Ella Ellis, doing business as George Ellis Food Store; Norman N. Ellis and Barbara B. Ellis, doing business as Ellis Variety Store; Murad Nasif and Mildred Nasif, doing business as M & M Super Store & Washateria; W.H. Hay, doing business as O.K. Cleaners & Shirt Laundry; Charles R. Dobbs, doing business as Western Auto Associate Store; Allen Motor Co., Inc.; Port Gibson Lumber & Supply Company, Inc.; and Mrs. Edgar A. McCaa, doing business as Town & County.

Civ. A. No. DC69–58–WK.

United States District Court,
N.D. Mississippi,
Delta Division.

Nov. 16, 1984.

David S. Tatel, Hogan & Hartson, Washington, D.C., Barry H. Powell, Gilbert & Powell, Jackson, Miss., for plaintiffs.

Dixon L. Pyles, Pyles & Tucker, Jackson, Miss., for defendants.

## MEMORANDUM OPINION

KEADY, Senior District Judge.

The court presently has for consideration plaintiffs'[1] motion for an award of attorneys' fees and litigation expenses incurred in this civil rights action brought under 42 U.S.C. § 1983 to enjoin defendants (state court plaintiffs) from seeking to enforce the judgment of the Chancery Court of the First Judicial District of Hinds County, Mississippi, granting injunctive relief against the continuation or enforcement of federal plaintiffs' boycott and picketing of various Port Gibson and Claiborne County, Mississippi, merchants, and awarding damages against the federal plaintiffs for conduct of the boycott. Plaintiffs, as prevailing parties in this federal district court, the United States Court of Appeals for the Fifth Circuit and the United States Supreme Court, seek a fees award totalling $227,302.50,[2] together with expenses of $15,883.93, against defendant Port Gibson and Claiborne County merchants[3] pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1981). Defendants object to the entry of any fees award on three grounds: (1) that plaintiffs' motion is untimely; (2) that § 1988 is inapplicable for lack of any state action to support the underlying § 1983 judgment; and (3) that § 1988 is inapplicable because this action was no longer pending on the effective date of the statute. Alternatively, defendants contest the reasonableness of plaintiffs' request, alleging duplication of effort on the part of plaintiffs' counsel. We preface our analysis with a brief procedural history of this protracted litigation.

Plaintiffs filed their amended complaint[4] on October 1, 1976, and on October 20, this

1. Plaintiff-movants are Aaron Henry, the National Association for the Advancement of Colored People (NAACP), the Mississippi State Conference of the NAACP, and the Coahoma Branch of the NAACP State Conference.

2. This figure represents 2510.25 hours of claimed compensable time multiplied by a weighted average hourly rate of $90.55 per hour. Plaintiffs seek compensation for legal services rendered at various stages of the litigation by ten attorneys, nine of whom are employed by the Washington, D.C., law firm of Hogan & Hartson, and the tenth by the Lawyers' Committee for Civil Rights Under Law (Lawyers' Committee).

3. The defendants against whom fees are sought are: Claiborne Hardware Company, Inc.; Q.H. McDaniel, Jr., doing business as McDaniel Pharmacy; James E. Hudson and George Hudson, doing business as Hudson Bros.; Waddy Abraham, doing business as Jitney Jungle; Joe Ellis, Mrs. Ben Mullin and Miss Ella Ellis, doing business as George Ellis Food Store; Norman N. Ellis and Barbara B. Ellis, doing business as Ellis Variety Store; Murad Nasif and Mildred Nasif, doing business as M & M Super Store & Washateria; W.H. Hay, doing business as O.K. Cleaners & Shirt Laundry; Charles R. Dobbs, doing business as Western Auto Associate Store; Allen Motor Co., Inc.; Port Gibson Lumber & Supply Company, Inc.; and Mrs. Edgar A. McCaa, doing business as Town & Country. Plaintiffs do not seek fees from the First National Bank of Clarksdale and other bank defendants who were mere stakeholders in this action.

4. This action was commenced on November 7, 1969. On June 10, 1970, Judge Smith of this court entered his memorandum opinion, enjoining the state court plaintiffs from prosecuting the action filed in the Chancery Court of Hinds County on October 31, 1969. *Henry v. First Nat'l Bank of Clarksdale*, 50 F.R.D. 251 (N.D.Miss. 1970). The Fifth Circuit reversed the district court's judgment on June 23, 1971, vacating the injunction and remanding the case with instructions to dismiss for lack of subject matter jurisdiction. 444 F.2d 1300 (5th Cir.1971) (*Henry I*). The Supreme Court denied certiorari, 405 U.S. 1019, 92 S.Ct. 1284, 31 L.Ed.2d 483 (1972), and the district court subsequently dissolved its injunction and dismissed the action, thereby concluding "round one" of this litigation. Trial on the merits in the state court suit commenced on June 11, 1973, and the chancellor's decree, prohibiting the federal plaintiffs from continuing the boycott and assessing damages incurred as a result of the boycott, was entered on August 19, 1976, precipitating the filing of the amended complaint in this action on October 1, 1976.

court, per Judge Orma R. Smith, issued three preliminary injunctive orders, one of which prohibited the state court plaintiffs from taking any action to enforce the injunction and damages award entered by the Hinds County Chancery Court pending review of the state court judgment by the Mississippi Supreme Court and, if necessary, by the United States Supreme Court.[5] *See* 424 F.Supp. 633, 639 (N.D.Miss.1976). Judge Smith's decision was affirmed in all respects by the Fifth Circuit on May 21, 1979. *Henry II,* 595 F.2d 291, 309 (5th Cir.1979). Defendants' petition for writ of certiorari was denied by the Supreme Court in January 1980. 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). In the meantime, the state court defendants pursued appropriate avenues of appeal from the judgment of the chancery court. That court's decision was affirmed by the Mississippi Supreme Court on December 10, 1980, *NAACP v. Claiborne Hardware Co.,* 393 So.2d 1290 (Miss.1980), but was subsequently reversed by the United States Supreme Court on July 2, 1982. 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982). The chancery court dissolved its injunction and vacated its award of damages on March 22, 1983, making further extensive proceedings in this court unnecessary. We finally dismissed this action on January 12, 1984.

### I. Timeliness

Defendants urge the court to deny plaintiffs' application for attorneys' fees and expenses as untimely. Defendants' brief in opposition calculates the date of service of plaintiffs' motion, February 9, 1984, as being "589 days after the United States Su-

preme Court reversed and remanded, 1622 days after the mandate of the Fifth Circuit was filed in the district court, and 345 days from the time the Hinds County Chancery Court entered its order," but ignores the fact that the motion was filed only twenty-eight (28) days after entry of this court's final order of dismissal on January 12, 1984. The Local Rules of this court provide that

> All motions for attorney's fees to be awarded by law as part of the costs of the action, whether provided for by statute or otherwise, shall be served by the prevailing party to whom costs are awarded not later than 30 days after entry of judgment.

N.D.Miss.R. C–13(2)(a).

■ Of course, "the district courts [are] free to adopt local rules establishing timeliness standards for the filing of claims for attorney's fees." *White v. New Hampshire Dept. of Employment Security,* 455 U.S. 445, 454, 102 S.Ct. 1162, 1168, 71 L.Ed.2d 325 (1982). Moreover, while recognizing that the final disposition of this lawsuit has consumed fifteen years in the state and federal courts, we find no prejudice or unfair surprise inhering in plaintiffs' application for fees and expenses at this time, nor is any alleged. Indeed, denial of plaintiffs' motion as untimely would operate to prejudice plaintiffs, as they were clearly entitled to rely on this court's policy pronouncements as incorporated in its Local Rules. It may well be that the court could have entered its final order of dismissal at an earlier date; however, our rules provide that a prevailing party shall have thirty days after such entry within which to serve

---

*See Henry v. First Nat'l Bank of Clarksdale,* 595 F.2d 291, 295–97 (5th Cir.1979) (*Henry II*) (detailing procedural history).

With the exception of a comparatively small number of hours claimed by Frank R. Parker, Esquire, of the Lawyers' Committee for services rendered on the appeal in *Henry I,* the fees and expenses claim which is the subject of the present motion does not seek any compensation for work performed prior to September 1976, when "round two" of this litigation began.

**5.** The second order reinforced and effectuated those parts of a December 15, 1969, preliminary

injunction prohibiting the state court plaintiffs from interfering with funds claimed by the State Conference and Local Branches of the NAACP on deposit in various defendant state banks. *See Henry II,* 595 F.2d at 305–06.

The third order, entered on behalf of the United States as intervenor, enjoined the state court plaintiffs from executing the state court judgment against or otherwise interfering with funds in the possession of Mississippi Action for Progress (MAP), which operated a federally funded Headstart Program in Mississippi. *See Henry II,* 595 F.2d at 307.

its motion. We therefore reject defendants' argument that the instant motion is untimely.

## II. State Action

■ Section 1988 provides for the allowance of a reasonable attorney's fee in the discretion of the court to a party prevailing "[i]n any action or proceeding to enforce a provision of [section] ... 1983...." 42 U.S.C. § 1988 (1981). As stated, defendants assert that § 1988 is inapplicable in the case *sub judice* because the named defendants against whom fees are sought are private parties and, as such, there was no state action which would support plaintiffs' underlying § 1983 judgment. However, the question of state action in this case has already been conclusively resolved unfavorably to defendants, and we are, of course, bound by this earlier determination. As the Fifth Circuit held in *Henry II:*

> The supplemental and amended complaint filed October 1, 1976, alleged that enforcement of the state court's judgment would infringe rights secured to the federal plaintiffs by the First and Fourteenth Amendments of the Constitution and by 42 U.S.C. § 1983; as such it plainly stated a federal cause of action over which the district court had jurisdiction under 28 U.S.C. §§ 1331(a) and 1343(3). The requisite state action which we found absent in *Henry I* has since been supplied by entry of the state Chancery Court judgment which is immediately enforceable. The crucial difference between a private party who has merely filed a civil suit in a state forum and the successful litigant who possesses an immediately enforceable state judgment is that in the latter case the full power and authority of the state can be invoked on behalf of the litigant. It is this exercise of state power that provides state action for purposes of the Fourteenth Amendment and section 1983.

595 F.2d at 299; *see also* 424 F.Supp. at 639. Section 1988 is thus applicable in this § 1983 action to vindicate rights under the First and Fourteenth Amendments, and defendants, having assumed the role of state actors, are jointly and severally liable for any award made by this court pursuant to § 1988.

## III. Pendency of the Action

■ Section 1988, as amended on October 19, 1976, and effective that date, applies to all cases pending on, or commenced subsequently to, the effective date of the amendment. *Hutto v. Finney,* 437 U.S. 678, 694 n. 23, 98 S.Ct. 2565, 2575, n. 23, 57 L.Ed.2d 522 (1978) (citing H.R.Rep. No. 94–1558 at 4 n. 6 (1976)).

■ Defendants' argument that this action was no longer pending on October 19, 1976, is patently without merit. We need only point to the date of Judge Smith's memorandum of decision and entry of orders of injunction, October 20, 1976, the day following the effective date of the statute, *see* 424 F.Supp. at 633, to refute defendants' contention. This action was plainly still pending before the district court on the effective date, as the court had not at that time finally disposed of the substantive motions for preliminary injunction. Furthermore, the Fifth Circuit has held that an action is considered "pending" even if the only issue remaining for resolution on the effective date of the statute is the question of attorneys' fees. *Taylor v. Sterrett,* 640 F.2d 663, 668 (5th Cir.1981); *Robinson v. Kimbrough,* 620 F.2d 468, 475 (5th Cir.1980); *see also Knights of the Ku Klux Klan, Realm of Louisiana v. East Baton Rouge Parish School Bd.,* 679 F.2d 64, 67–68 (5th Cir.1982) (action is pending on effective date of Equal Access to Justice Act, 28 U.S.C. § 2412, where motion for attorneys' fees is only matter still before the court).

## IV. The Johnson Factors

For these reasons, we conclude that plaintiffs, as prevailing parties in this civil rights action, are entitled to recover reasonable attorneys' fees and litigation expenses from defendants. After considering affidavits and statements of counsel regarding the reasonableness of plaintiffs'

fee request, the court, pursuant to the guidelines established in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974), as modified by *Copper Liquor, Inc. v. Adolph Coors Co.,* 624 F.2d 575, 581–84 (5th Cir.1980) (*Copper Liquor II*), and *Copper Liquor III,* 684 F.2d 1087, 1092–97 (5th Cir.1982), finds as follows.

## A. Time and Labor Required

As noted, plaintiffs seek an award of attorneys' fees in the amount of $227,302.50 for 2510.25 hours of legal services performed by ten attorneys at various stages of the proceedings during the past eight years.[6] Of this total, 593.25 hours were expended by four attorneys at the district court level from September 17, 1976, to October 20, 1976.[7] Nine attorneys rendered 1589.5 hours of legal services related to proceedings in the Court of Appeals from October 18, 1976, through July 1979.[8] Four attorneys spent 97.75 hours in preparing plaintiffs' opposition to defendants' petition for writ of certiorari from November 1979 to February 1980,[9] and 104.75 hours were expended by four attorneys in limited district court proceedings

following denial of certiorari and in preparing plaintiffs' motion for attorneys' fees.[10]

At the outset, the court concludes that the 170 total compensable hours claimed by Frank R. Parker of the Lawyers' Committee should be substantially reduced. Of these 170 hours, 125 were devoted to plaintiffs' unsuccessful defense of the appeal taken by defendants from Judge Smith's stay of the state court proceedings in "round one" of this litigation during 1970 and 1971, five years prior to the initiation of the instant proceedings. That aspect of the litigation involved issues fundamentally different from those later successfully advanced by plaintiffs, and should not be included in the calculation of a reasonable attorneys' fee award. Since plaintiffs did not prevail on the first issue, the court disallows the 125 hours expended by Mr. Parker prior to September 1976.

Furthermore, in stark contrast with the precise itemizations of time and labor expenditures submitted by the nine Hogan & Hartson attorneys, Mr. Parker's affidavit is woefully lacking in any details which would substantiate the time claimed. Particularly disturbing is Mr. Parker's failure to record daily entries and to instead rely

---

**6.** The total number of hours includes 125 claimed by Frank R. Parker of the Lawyers' Committee for work at the Court of Appeals and Supreme Court levels in 1970–71. *See infra* text following note 10.

**7.**

District Court Proceedings:

| | |
|---|---|
| Benton R. Hammond | 67.5 hours |
| Frank R. Parker (Lawyers' Committee) | 20.0 |
| David S. Tatel | 237.75 |
| Dale F. Swartz | 268.0 |
| | 593.25 |

**8.**

Court of Appeals Proceedings:

| | |
|---|---|
| Philip A. Bjorlo | 77.75 hours |
| Vincent H. Cohen | 32.5 |
| Benton R. Hammond | 761.0 |
| Elliott M. Mincberg | 64.25 |
| Frank R. Parker (Lawyers Committee) | 25.0 |
| Walter A. Smith, Jr. | 313.75 |
| Allen R. Snyder | 116.0 |
| David S. Tatel | 75.25 |
| Dale F. Swartz | 124.0 |
| | 1589.5 |

**9.**

Supreme Court Proceedings:

| | |
|---|---|
| Elliott M. Mincberg | 23.5 hours |
| Walter A. Smith, Jr. | 65.5 |
| Allen R. Snyder | 4.75 |
| David S. Tatel | 4.0 |
| | 97.75 |

**10.**

Further District Proceedings and Attorneys' Fees:

| | |
|---|---|
| Elliott M. Mincberg | 29.75 hours |
| Katherine A. Schoff | 63.25 |
| Walter A. Smith, Jr. | 1.0 |
| David S. Tatel | 10.75 |
| | 104.75 |

on single line entries for each of the years 1977, 1978 and 1979. For example, the 1977 entry reflects 12 hours devoted to "[c]onferences with clients and co-counsel [and] review of Fifth Circuit briefs," between January and December 1977, with no indication of the dates of such conferences and study, the number or subject matter of the discussions, or the amount of time consumed by each conference. The entries for 1978 and 1979 are similarly skeletal. While the Fifth Circuit has held that contemporaneous time records are not indispensable, *Copper Liquor III*, 684 F.2d at 1094; *Harkless v. Sweeny Indep. School Dist.*, 608 F.2d 594, 597 (5th Cir.1979), we believe that a reduction in the remaining hours (45) by one-third is justified where, as here, it is impossible for the court to determine exactly what services counsel has performed. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 437–38, 1942 n. 14, 103 S.Ct. 1933, 1939, 1941–42, 76 L.Ed.2d 40, 50, 53–54, 54 n. 14 (1983) (applicant bears burden of documenting appropriate hours expended and should maintain billing time records to enable reviewing court to identify distinct claims). Accordingly, we reduce Mr. Parker's compensable time to 30 hours.[11]

Hogan & Hartson seeks compensation for the services of nine attorneys who spent a total of 2340.25 hours on this case. In our view, the affidavits and documentation submitted in support of this fee request reflect an unreasonable expenditure of attorney hours in preparation for proceedings in both this court (593.25 hours) and the Fifth Circuit Court of Appeals (1589.5 hours). After careful review of these time records, we conclude that there was substantial duplication of effort by the several attorneys involved which should not be rewarded by this court. Additionally, in numerous instances large blocks of time—often hundreds of hours—were devoted to intrafirm conferences, research, drafting, editing, review, and revision which simply cannot be justified as either reasonable or necessary, notwithstanding

the complexity and significant constitutional import of the issues argued and decided. We do not doubt the wisdom or value of having more experienced counsel direct and supervise the efforts of those with less experience, but even so, an examination of the time sheets generated in this cause leaves the court with the stark impression that counsel were engaged in massive legal overkill.

■ We note that in scrutinizing the actual hours reported by counsel, we must "distinguish 'raw' time from 'hard' or 'billable' time to determine the number of hours reasonably expended." *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir.1983). As the *Ramos* court observed,

> Compiling raw totals spent, however, does not complete the inquiry. It does not follow that the amount of time actually expended is the amount of time *reasonably* expended. In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.

*Id.* (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.1980) (en banc)) (emphasis in original).

Although this litigation spanned nearly eight years, the actual court proceedings were quite limited. District court action involved only a one-hour *ex parte* hearing on October 1, 1976, on plaintiffs' motion for a temporary restraining order, and a three-hour hearing on October 8, 1976, on plaintiffs' motions for preliminary injunction. Necessarily attendant with these two hearings were the preparation and service of plaintiffs' amended complaint, the several motions and supporting legal memoranda. Three Hogan & Hartson attorneys, Mr. Tatel, Mr. Swartz, and Mr. Hammond, performed services either during, or in anticipation of, these two hearings. Of the 237.-

11. We note that our objection to the sufficiency of Mr. Parker's records with regard to time logged after September 1976 would be equally applicable to the 125 hours he claims for work done in 1970 and 1971 had we not disallowed those hours on other grounds.

75 hours claimed by Mr. Tatel, a minimum of 134 hours were devoted to services generally described by Mr. Tatel as "preparation of court papers, conferences and research." In almost all instances, the court is not informed of what "court papers" were prepared, what issues were researched, or with whom conferences were held. Because both Mr. Swartz and Mr. Hammond also seek compensation for research, preparation of pleadings and conferences among the three attorneys, we believe that there exists in Mr. Tatel's records a substantial likelihood of duplicative work. Accordingly, we deduct 67 hours (one-half of the questioned 134 hours) from Mr. Tatel's claimed compensable time.

█ The court further finds that the presence of more than one Hogan & Hartson attorney at the TRO and preliminary injunction hearings in Oxford, Mississippi, on October 1 and October 8, 1976, was not reasonably warranted under the circumstances. Both Mr. Swartz and Mr. Hammond accompanied Mr. Tatel from Washington to the October 1 hearing, thereby generating a large number of additional billable hours, although neither attorney participated in the proceedings there. Mr. Hammond also appeared with Mr. Tatel at the October 8 hearing, again without participating.[12] Defendants should therefore not be compelled to compensate plaintiffs for time spent by Messrs. Swartz and Hammond in traveling to Mississippi or preparing for and attending the Oxford hearings. *See Taylor v. Sterrett*, 640 F.2d 663, 670 (5th Cir.1981) (time spent by more than one attorney where only one attorney is needed may be discounted); *Dunten v. Kibler*, 518 F.Supp. 1146, 1151–52 (N.D.Ga.1981) (same). Mr. Swartz's compensable time will thus be reduced by 87.5 hours to 180.5 hours; likewise, Mr. Hammond's compensable time will be reduced by 31.5 hours to 36 hours.

Eight Hogan & Hartson attorneys seek compensation from defendants for 1564.5 hours expended in appellate court proceedings. In successfully opposing defendants' appeal to the Fifth Circuit, plaintiffs' counsel prepared three briefs and participated in oral argument. As was true of counsel's conduct of the litigation in the trial court, Hogan & Hartson's involvement in the appellate proceedings is marked by extravagant usage of time and an utter failure to exercise billing judgment. In determining what time is properly excludable, we follow the compelling guideline expressed in the legislative history of § 1988: the statute "may not be subverted into a ruse for producing 'windfalls' for attorneys." *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir.1983) (citing S.Rep. No. 1011 at 1, 94th Cong., 2d Sess. (1976), *reprinted in* [1976] U.S.Code Cong. & Ad.News 5908, 5912–13).

Without intent to limit our criticism to a single attorney, the time records of Benton R. Hammond are illustrative of the billing abuse that abounds in plaintiffs' application. Mr. Hammond bore the primary, though by no means sole, responsibility for researching and writing plaintiffs' initial responsive brief in the Fifth Circuit, charging more than 300 hours to research and approximately 350 more to drafting the brief. The devotion of more than 650 hours to the preparation of plaintiffs' appellate brief—exclusive of the literally hundreds of hours claimed by other attorneys on the case for consultation, review, editing, and rewriting of the brief—cannot be justified and will not be condoned by the court. We emphasize that Mr. Hammond's are not the only excesses; they are merely the most visible. The time records submitted by all counsel are replete with duplication and inefficiency. The court accordingly reduces the allowable hours expended at the appellate court level by Hogan & Hartson attorneys as follows:

Messrs. Swartz and Hammond in Mississippi, including service of pleadings and orders, could have been accomplished by these attorneys.

---

12. Plaintiffs were also represented at both Oxford hearings by counsel from the NAACP and the Lawyers' Committee. It is reasonable to assume that any of the duties performed by

| Attorney | Hours Claimed | Reduction | Total Compensable Hours |
|---|---|---|---|
| Philip A. Bjorlo | 77.75 | −19.0 | 58.75 |
| Vincent H. Cohen | 32.5 | −26.0 | 6.5 |
| Benton R. Hammond | 761.0 | −380.5 | 380.5 |
| Elliott M. Mincberg | 64.25 | −26.5 | 37.75 |
| Walter A. Smith, Jr. | 313.75 | −123.25 | 190.5 |
| Allen R. Snyder | 116.0 | −53.5 | 62.5 |
| David S. Tatel | 75.25 | −41.5 | 33.75 |
| Dale F. Swartz | 124.0 | −47.25 | 76.75 |

Finally, the court determines that the number of hours expended at the Supreme Court level and in subsequent district court proceedings, including preparation of the instant attorneys' fee application, as previously set out in the margin, *see supra* notes 9 and 10, are reasonable and should be allowed. The court thus finds a total of 1466.75 hours to be compensable.

## B. Novelty and Difficulty of the Issues

The instant case involved application of established but highly complicated legal principles in a difficult factual context. Plaintiffs' counsel were required to address serious jurisdictional and constitutional questions concerning the scope of the First Amendment, the standards for granting federal injunctive relief against the enforcement of a state court judgment and the applicability vel non of the Anti-Injunction Act, 28 U.S.C. § 2283 (1976), and the equitable doctrine of federal abstention articulated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

## C. The Skill Requisite to Perform the Legal Services Properly

The court finds that plaintiffs' counsel ably and skillfully performed the professional services rendered on behalf of their clients.

## D. Preclusion of Other Employment by the Attorneys Due to Acceptance of the Case

Plaintiffs' counsel expended a total of 2510.25 hours in furtherance of this action, 1466.75 of which we have found to be compensable, during the course of eight years. There were unquestionably periods of peak activity, as well as periods of relative dormancy. While some attorneys involved in this case apparently worked on little else during the pendency of the action, as we have previously stated, the extremely large number of hours devoted to this litigation was not reasonably necessary to accomplish the same result; if Hogan & Hartson suffered preclusion of other employment thereby, the choice was clearly its own to make. As regards Mr. Parker, we find this factor to be of little, if any, significance.

## E. The Customary Fee

The court is required to select an hourly rate of compensation for each attorney which reflects the "customary fee for similar work in the community." *Johnson*, 488 F.2d at 718. Plaintiffs' counsel seek compensation at hourly rates ranging from $65 to $155 per hour, depending upon the experience of each individual attorney. As explained by the affidavit of Mr. Tatel, the requested billing rates are "current equivalent" rates—the standard rate which Hogan & Hartson would currently charge for work done by attorneys with experience equivalent to that possessed by attorneys working on this case at the time the services were rendered. While we agree with plaintiffs that current rates are properly chargeable to offset delay in payment for services rendered in the past, *cf. Copeland v. Marshall*, 641 F.2d 880, 893 (D.C.Cir. 1980) (en banc) (delay in receipt of payment may be incorporated into contingency adjustment), we believe that the rates allowed by this court for legal work performed in this judicial district should reflect the customary fee here rather than the standard rates in Washington, D.C. The court observes that reasonable hourly rates for professional services prevailing in this district fall generally within the $60 to $100 range, depending upon the experience, skill and reputation of the particular attorney involved. Accordingly, we reduce the claimed hourly rates as follows:

| | Claimed Rate | Allowable Rate |
|---|---|---|
| Bjorlo | $ 65–75 | $ 65 |
| Cohen | 155 | 100 |
| Hammond | 75–95 | 65 |
| Mincberg | 65–105 | 65 |
| Parker | 100 | 90 |
| Schoff | 65–75 | 65 |
| Smith | 105–135 | 90 |
| Snyder | 105–135 | 90 |
| Swartz | 75–90 | 65 |
| Tatel | 115–155 | 100 |

## F. Whether the Fee is Fixed or Contingent

Plaintiffs' counsel represented plaintiffs on a *pro bono* basis, and will receive no other compensation than that awarded by this court.

## G. Time Limitations

The nature of the remedy sought by plaintiffs in the district court, temporary and preliminary injunctive relief, and the immediacy of enforcement of the state court judgment, required plaintiffs' counsel to work under severe time limitations at the district court level. Thereafter, time limitations imposed either by the clients or by the circumstances of the case were not a significant factor.

## H. The Amount Involved and the Results Obtained

Plaintiffs achieved total success at all stages of this litigation. The grant of injunctive relief by Judge Smith, affirmed on appeal, prevented enforcement of a state court judgment which would have substantially infringed plaintiffs' First Amendment rights and very possibly resulted in the NAACP's bankruptcy.

## I. Experience, Reputation and Ability of the Attorneys

Plaintiffs' counsel enjoy a fine reputation in federal civil rights litigation and, true to their collective reputation, handled this case with skill and ability. The hourly rate allowed each attorney reflects that attorney's degree of experience.

## J. Undesirability of the Case

This factor is not relevant in this case.

## K. Professional Relationship with the Client

This factor is not relevant in this case.

## L. Awards in Similar Cases

Our awards of $65, $90 and $100 per hour fall within the range of prevailing rates in this judicial district and are consistent with hourly rates recently awarded in other civil rights cases before this court. *See, e.g., Hart v. Walker,* No. WC 80-82-WK-P, Order of July 13, 1984 ($75 per hour); *Quarles v. St. Clair,* No. GC 77-37-K, Order of July 2, 1984 ($75 per hour); *Gates v. Collier,* No. GC 71-6-K, Order of September 12, 1983 ($60 and $75 per hour).

Under the method adopted by the Fifth Circuit in *Copper Liquor, Inc. v. Adolph Coors Co.,* 624 F.2d 575, 583 (5th Cir.1980) (*Copper Liquor II*); *see Copper Liquor III,* 684 F.2d 1087, 1092-93 (5th Cir.1982), directing the district court to give "special heed" to the *Johnson* factors of time and labor involved, the customary fee, the results obtained, and the experience, reputation and ability of counsel, in arriving at a "lodestar" figure, which should then be adjusted on the basis of other relevant *Johnson* factors, we determine that an appropriate attorneys' fee award in this case is $112,096.25, allocable as follows:

| Attorney | Compensable Hours | Hourly Rate | Fees |
|---|---|---|---|
| Bjorlo | 58.75 | $65 | $ 3,818.75 |
| Cohen | 6.5 | 100 | 650.00 |
| Hammond | 416.5 | 65 | 27,072.50 |
| Minceberg | 91.0 | 65 | 5,915.00 |
| Parker | 30.0 | 90 | 2,700.00 |
| Schoff | 63.25 | 65 | 4,111.25 |
| Smith | 257.0 | 90 | 23,130.00 |
| Snyder | 67.25 | 90 | 6,052.50 |
| Swartz | 257.25 | 65 | 16,721.25 |
| Tatel | 219.25 | 100 | 21,925.00 |
| TOTAL | 1,466.75 | | $112,096.25 |

After reviewing the other relevant *Johnson* factors, we decline to adjust this award either upward or downward. Despite the exceptional nature of this case, an enhancement of the fee should not be allowed because of the undue number of attorneys who claim an extraordinary amount of time for services rendered for what amounts to essentially one appeal. We are confident that the allowance made represents adequate compensation for the legal services rendered on behalf of plaintiffs. Such an award compares very favorably with awards this court has made in similar cases and, as discussed above, the various hourly rates allowed counsel are in line with the prevailing rates in this district.

## V. Expenses

Plaintiffs' counsel also seek an award of $15,883.97 for out-of-pocket litigation ex-

penses incurred in this cause through January 31, 1984. All reasonable expenses that would customarily be billed to a fee-paying client may, of course, be recovered by plaintiffs as prevailing parties under 42 U.S.C. § 1988. *Loewen v. Turnipseed,* 505 F.Supp. 512 (N.D.Miss.1980). As such, we allow reimbursement as follows:

| | |
|---|---|
| Premium on $110,000 injunction bond, $863.00 per year for 8 years | $ 6,904.00 |
| Court costs | 59.68 |
| Photocopying | 1,361.21 |
| Telephone and telegraph | 472.24 |
| Computer research | 741.81 |
| Printing | 355.53 |
| Postage | 144.15 |
| TOTAL | $10,038.62 |

We exclude $270.60 in "miscellaneous" expenditures and also those elements of counsel's application which are properly attributable to office overhead and would not normally be passed on to fee-paying clients: local transportation ($202.60) and secretarial overtime ($2,472.97). *See Dowdell v. City of Apopka,* 698 F.2d at 1192 (expenses allocable to routine office overhead may be excluded). The court also excludes plaintiffs' claim for $2,899.18 for out-of-town travel expenses as inadequately documented. We have previously disallowed compensation for the presence of two attorneys at out-of-town hearings, believing their representation to be superfluous, and it is impossible to determine from the face of plaintiffs' claim the attorneys who were required to travel, the destination of the travelers, or the purpose and dates of the trips made.

### VI. Conclusion

To summarize, we today conclude that plaintiffs, as prevailing parties in this civil rights action, are entitled to recover from defendants the sum of $122,134.87, representing an award of attorneys' fees in the amount of $112,096.25 and litigation expenses in the amount of $10,038.62.

Let an order issue accordingly.