Nelson DOTSON, Ruthie Mae Moton, Edna Battle, Myron Harris, Albert Matthews, John Richardson, Robert Kent, Rosianna Hazlett, Dudley Grace, Charlie Tillis, John Chance, Frank Walker, Girter Walker, William Steen, Belton Johnson, and Ellis Wyms, on behalf of themselves and all others similarly situated, plaintiffs,

v.

The CITY OF INDIANOLA, MISS., Phillip Fratesi, Gary L. Auston, Charlotte H. Buchanan, G. Clark Johnson, W. Harold Manning, and James D. Robinson, in their official capacities as respectively the Mayor and Board of Aldermen of the City of Indianola, Miss., defendants.

No. GC80–220–WK–O.

United States District Court,
N.D. Mississippi,
Greenville Division.

July 9, 1986.

See also 514 F.Supp. 397.

Charles Victor McTeer, Greenville, Miss., Sidney Bixler, Washington, D.C., Carver Randle, Indianola, Miss., Morton Stavis and Randolph Scott-McLaughlin, New York City, A. Spencer Gilbert, III, Jackson, Miss., for plaintiffs.

W. Dean Belk, Indianola, Miss., T. Hal Freeland, III, Oxford, Miss., for defendants.

## MEMORANDUM OF DECISION

KEADY, Senior District Judge.

This cause was this day presented upon the affidavits of attorneys for both sides, statements of counsel in chambers, and interrogation by the court of all attorneys who were present representing the parties and their respective interests with regard to the claim for attorneys' fees and expenses submitted by plaintiffs in the sum of $337,689 claimed as fees for seven attorneys engaged to prosecute the suit and the claim for attorneys' fees, together with demand for out-of-pocket expenses in the sum of $37,778.55.

After examination of the jacket file, the court finds that plaintiffs are entitled to a reasonable attorney fee and recovery of reasonable litigation expenses pursuant to 42 U.S.C. § 1988 (1981), which provides as follows:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Defendants do not contest the propriety of a fee award but contend that the total fees and expenses claimed are excessive and should substantially be reduced. Defendants also object to seven different lawyers, or law firms, being compensated for their efforts on behalf of the plaintiffs. In order to place this case in proper prospective, it is necessary that we briefly recount the procedural history.

## I. *Procedural History*

In their complaint filed October 1, 1980, plaintiff class of black citizens in a voting rights action sought to hold the City of Indianola and its officials in contempt because of their actions following determination of the Attorney General regarding four areas previously annexed by the City, or, alternatively, to declare legal boundaries and establish election procedures for holding primary and general municipal elections. The defendant City and its officials countered by seeking the postponement of municipal elections and to have the court declare temporary election boundaries proposed by them. Pursuant to plaintiffs' request for a three-judge court, it was held (1) that the district court was without jurisdiction to question the Attorney General's authority limiting his objection to one annexation when four annexations by the City was submitted as a unit; (2) that the City was under an obligation to allow electors residing in areas precleared by the Attorney General to vote; (3) defendants and their counsel were not in contempt of court; and (4) no good reason existed for delaying elections. *Dotson v. City of Indianola*, 521 F.Supp. 934 (N.D.Miss.1981). It should be pointed out that the Attorney General had, on October 2, 1975, advised the City Attorney that Indianola had made several annexations to its city limits since November 1, 1964, and for which no submissions for preclearance had been made. The Attorney General's request for information was repeated on December 23, 1975, regarding information set forth in the disclosed 1966–1967 annexations. The City did not see fit to respond.

After other requests to the City, the mayor, on March 6, 1981, (after the plaintiffs had filed their complaint) provided the information which the Justice Department had requested on December 23, 1975. City attorneys then beseeched the Attorney General to preclear under § 5 all annexations as a package. The Attorney General ultimately responded, and declined to preclear this type of submission. The three-judge court having previously held that the City's failure to preclear was a violation of § 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1971, *et seq, supra,* the remaining issues were remanded to the single judge. A principal question related to what would be the election boundaries for the forthcoming municipal elections in October 1981. In general, the position of the plaintiffs was upheld, and the contentions of the defendants were overruled. The court established the legal boundaries for municipal elections by including the area which had been precleared by the Attorney General, and none other. 521 F.Supp. 934 (N.D.Miss.1981). This ruling had the effect of excluding from the franchise in the October 1981 elections both a considerable number of white electors as well as a lesser number of black electors. Because the district court refused to postpone the elections as requested by defendants, the City prosecuted appeals concurrently to the Fifth Circuit Court of Appeals and to the Supreme Court of the United States. Once the appeal was lodged in the Supreme Court, plaintiffs moved to affirm the judgment of the district court and dismiss the action. The Supreme Court, on June 1, 1982, upheld plaintiffs' positions, affirmed the judgment and dismissed the City's appeal, 456 U.S. 1002, 102 S.Ct. 2287, 73 L.Ed.2d 1296, affirming the judgment of the district court, 521 F.Supp. 934.

Subsequent proceedings related to the efforts of black residents in certain subdivisions which the City refused to annex sought to enjoin the City from prosecuting annexation proceedings in the Chancery Court of Sunflower County. The district court held that where the City proposed annexation of white subdivisions and black subdivisions would result in a black majority population of no less than 75%, thereby avoiding retrogression when measured by the effective date of the Voting Rights Act, annexation should be permitted despite objections of blacks that to establish racial percentages of municipal population existing on the effective date of the Voting Rights Act would nonetheless produce a white voting age majority. The district court also held that black residents of sub-

divisions outside the City could not be excluded from City annexation on account of race. 551 F.Supp. 515 (N.D.Miss.1982). After both sides appealed this ruling, which was on cross motions for summary judgments, the Fifth Circuit in *Dotson v. Indianola*, 739 F.2d 1022, reversed the action of the district court and granted relief substantially in favor of plaintiffs, and defendants likewise obtained relief of a procedural nature only.

## II. *Which Party Prevailed?*

■ There can be little doubt that the plaintiffs were the prevailing parties and obtained the greater portion of the relief sought. This entitled them to an award of attorneys' fees under § 1988. The fact that the plaintiffs did not prevail on all issues which they raised, and there were several in which they were admittedly unsuccessful, does not jeopardize their right to recover reasonable fees and expenses in this litigation. It is quite possible from the record to segregate those items which should be excluded from compensable hours, and to calculate fair and reasonable compensation to the plaintiffs and their counsel.

## III. *Fee Bills Submitted.*

Fee bills have been submitted by seven attorneys, or firms of attorneys, on behalf of plaintiffs, as follows:

| Attorney | Hourly Rate | Hours Claimed | Fee |
| --- | --- | --- | --- |
| Charles Victor McTeer | $150.00 | 1820.68 | $273,102.00 |
| Sidney Bixler | 100.00 | 69.90 | 6,990.00 |
| Morton Stavis | 150.00 | 69.17 | 10,375.50 |
| Randolph Scott-McLaughlin | 180.00 | 125.30 | 22,554.00 |
| Carver A. Randle | 75.00 | 59.10 | 4,432.50 |
| Willie Bailey | 75.00 | 53.80 | 4,035.00 |
| A. Spencer Gilbert, III | 90.00 | 180 | 16,200.00 |
| Total Fees Requested | | | $337,689.00 |

## IV. *Reasonableness of Plaintiffs' Fee Request*

The Supreme Court, in *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 51, dictates that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *See also, Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 1543, 79 L.Ed.2d 891, 895 (1984). This initial calculation may then be adjusted upward or downward by the district court to account for such factors as either exceptional or limited success and the contingent nature of the lawsuit. Similarly, the Fifth Circuit has directed district courts to give "special heed" to the *Johnson*[1] factors of time and labor involved, the customary fee, the results obtained, and the experience, reputation and ability of counsel, in arriving at a "lodestar" figure, which should then be adjusted on the basis of other relevant *Johnson* factors. *Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575, 581–84 (5th Cir.1980) (*Copper Liquor II; see also Graves v. Barnes*, 700 F.2d 220, 222 (5th Cir.1983); *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1092–93 & n. 11 (5th Cir.1982) (*Copper Liquor III*), *modified in part en banc*, 701 F.2d 542 (5th Cir.1983).

After considering memoranda of law and affidavits and statements of counsel regarding the reasonableness of plaintiffs' fee request, the court, pursuant to the guidelines articulated in *Hensley*, 461 U.S. at 432–438, 103 S.Ct. at 1939–1942, 76 L.Ed.2d at 50–53, and *Johnson*, 488 F.2d at 717, as modified by *Copper Liquor II*, 624

---

1. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974).

F.2d at 581–84, and *Copper Liquor III,* 684 F.2d at 1092–97, and as affected by *Blum v. Stenson,* 465 U.S. at 896–901, 104 S.Ct. at 1548–50, 79 L.Ed.2d at 901–03 (certain *Johnson* factors irrelevant to court's consideration of request for enhancement of fee), finds as follows.

### A. *Time and Labor Required*

### (Hours they claim)

▇ As stated, plaintiffs' counsel seek compensation for seven attorneys, or firms of attorneys, at various stages of this litigation. This total includes 50 hours expended by each of local counsel Willie Bailey and Carver A. Randle, both of whom were, at the time the services were rendered, young attorneys with limited experience in civil rights litigation. Their contributions to the case were minimal. The court reduces compensable time of each attorney by 4 hours and also reduces their claimed rate of $75.00 hourly to $50.00 for each hour of their compensable time. Each of these attorneys are being fairly compensated at the allowance made; their claims for insubstantial expenses, however, are disallowed.

▇ Sidney Bixler of Wasington, D.C., an attorney with civil rights experience, was engaged by the plaintiff class to assist local counsel in § 5 annexation litigation. This attorney claims 69.9 hours, for which compensation is requested at the rate of $100.00 per hour. The court deducts 8.9 hours for time spent in appearing before the Department of Justice officials regarding the obligations of that department under § 5 of the Voting Rights Act in preclearing, or not preclearing, municipal annexations. Under settled case law, the hours thus spent are not compensable for efforts expended with the office of the Attorney General in preclearance matters. See *Posada v. Lamb County,* 716 F.2d 1066, 1098 (5th Cir.1983), and *Arriola v. Harville,* 781 F.2d 506, 509–510 (5th Cir. 1986). The court also reduces Mr. Bixler's hourly rate from $100.00 to $75.00. He is, therefore, found to be entitled to 61 hours at the rate of $75.00 per hour, resulting in a fee award of $4,575.00. In addition, Bix-

ler's expense of $589.00 for travel from Washington, D.C. to Greenville, for court appearances, is fair and reasonable and will be allowed.

▇ Randolph Scott-McLaughlin, staff attorney for the Center for Constitutional Rights in New York City and Boston, claims compensation for 125.3 hours at an hourly rate of $180.00, for a total demand of $22,554.00. The court finds that based on fee awards prevailing in this court, including demands of other counsel for plaintiffs, the $180.00 hourly rate sought by this attorney is grossly excessive, and it will be reduced to $90.00 per hour, which the court notes is the rate that Mr. Scott-McLaughlin says he would receive in a case regardless of the outcome, and not handled on a contingent basis. Considering the circumstances of this case, it would appear to be foregone at the inception that the court would find the City of Indianola in violation of § 5 of the Voting Rights Act and that as a result of this relief would award plaintiffs' counsel reasonable attorneys' fees. Under the circumstances, Scott-McLaughlin was taking no chance in not being compensated for investing a reasonable number of hours in the litigation. The Supreme Court, in *Hensley,* emphasized that attorneys should not expect to be compensated for raw time but that they must exercise "billing judgment" as if their fee bills were being submitted to their own clients, and not to the adversary party. Guided by that principle, we have no difficulty in finding that Scott-McLaughlin's claim for time is quite excessive for several reasons; he utilized the services of Rutgers University law students; he claims an excessive number of hours in reviewing pleadings and conferring with co-counsel by telephone; and he, too, includes the excludable time of conferences with Department of Justice regarding preclearance in the Indianola case. The compensable time for this attorney is reduced from 125.3 hours to 100 hours, making a total award of $9,000.00 due him.

▇ Morton Stavis, a member of the bar of the State of New York, is an expert

in civil rights and constitutional litigation. He has appeared in many courts, including the Supreme Court of the United States. He claims 69.17 compensable hours at a rate of $150.00 an hour because of the contingent nature of his employment. He states that his standard billing rate in New York is $100.00 to $125.00 an hour for work that is of a non-contingent nature. The court finds that in this case the valuable services of Mr. Stavis justify a recognition that the 69 hours claimed by him were reasonably invested in the litigation since he made court appearances at Jackson and Greenville, Mississippi, on at least two occasions, and gave helpful guidance and advice to Charles Victor McTeer, the lead counsel. Although a rate of $150.00 an hour for his work cannot be allowed, he is entitled to receive $100.00 an hour in line with his customary billing for work which does not depend upon a contingent outcome. As in the case with Scott-McLaughlin, Stavis' compensation was a foregone certainty because of the patent violation of § 5 by Indianola in not submitting to the Department of Justice preclearance for annexations previously made by the municipality. Stavis' expenses of $854.00 are reasonable in every respect to cover the expenses of air fare for two round trips from New York to Mississippi for attendance in court on April 7 and June 23, 1981.

The next attorney seeking compensation for fees and expenses is Charles Victor McTeer, who was lead counsel throughout the case. His raw time in the case is 1820.68 hours, for which he claims a rate of $150.00 per hour for a fee of $273,102.00.

In addition, Mr. McTeer claims expenses aggregating $31,869.96, itemized as noted below: [2]

The court finds at the outset that McTeer's claim of $150.00 an hour is based upon a multiplier of 100% and that his base hourly fee is $75.00, which is a reasonable allowance for the compensable time he gave to this litigation in the years 1980 through 1984, except that he is due to be compensated at the rate of $100.00 per hour for 100 hours expended in the Supreme Court of the United States. For the years 1985–1986, McTeer is entitled to be compensated at the rate of $85.00 per hour. While McTeer's efforts were successful, the court finds there is no basis for making award of 100% multiplier to him or any of his co-counsel, most of whom also seek a 100% multiplier. There were no features of the case deserving of an enhancement or revision upward or downward, and the hourly rates herein fixed constitute fair and reasonable ocmpensation for the nature and the work done by each attorney. There remains to be determined what hours should be excludable from the number of hours that McTeer claims. We find from an examination of the affidavits and the nature of the services rendered that McTeer's total hours claimed should be reduced to 1457, or a total reduction of 369 hours. This reduction was necessitated for several reasons; (1) the inclusion of 60 hours expended in conferring with Department of Justice officials, which is disallowed; (2) 40.4 hours for participating in proceedings in the Chancery Court of Sunflower County regarding Indianola's peti-

2.

| Expense Item | Amount |
|---|---|
| * Other attorneys (Scott-McLaughlin & Stavis | $ 1443.00 |
| * Gilbert Expenses | 755.19 |
| McTeer's itemized expenses | 6949.22 |
| Air Travel | 2750.00 |
| Engineers' costs | 18,000.00 |
| Auto Mileage | 112.00 |
| Meals | 25.00 |
| Hotel | 227.00 |
| Taxi | 34.40 |

| Expense Item | Amount |
|---|---|
| Telephone | $ 242.58 |
| Copying costs | 625.00 |
| Postage | 450.00 |
| Xerox | 257.00 |
| Newspaper | 95.24 |
| Car rental | 198.74 |
| **Total Expenses** | $32,164.37 |

*Total of these sums is to be deducted from the expense allowance made to McTeer.

tion to annex nine subdivisions, which is improper; (3) 75 hours disallowed for excessive time claimed in trips to confer with associate counsel in Boston and New York City; (4) 52 hours on the failed issue of time expended on motion to limit the city's hiring of attorneys; (5) 7 hours on the failed issue of compelling Frank Crosthwait, former city attorney, to give deposition; (6) 17 hours on the failed issue of plaintiffs' attempt to stay annexation proceedings in the state Chancery Court; (7) 3.5 hours on the failed issue of plaintiffs' motion for appointment of receiver; and (8) at least 115 hours for excessive time claimed in conferring with associates and in meeting with members of the plaintiff class. With a reduction of compensable time to 1457 hours, there remains to be considered the compensation due to McTeer at the stated rates of $75.00 per hour for his services rendered in 1980 through 1984, except for the 100 hours rated at $100.00 per hour in the Supreme Court, and the increased rate of $85.00 per hour for his compensable time during the years 1985–1986. Under this calculation, McTeer is entitled to an attorney's fee of $120,000.00, which the court finds to be reasonable, plus reimbursement of out-of-pocket expenses of $29,966.18.

A Spencer Gilbert, III, a member of the bar of Jackson, Mississippi, was employed by plaintiffs' counsel to prepare fee bills and expenses and to prosecute the same before this court. While Gilbert is an experienced trial attorney, his work was limited to the mundane task of advising the court as to the reasonable fees and expenses of plaintiffs several attorneys. He claims 180 hours of compensable time at a rate, or total fee award, of $16,200.00 plus certain expenses. We allow Mr. Gilbert 180 hours of compensable time at the rate of $75.00 per hour, making a total fee award of $13,500.00, plus his expenses of $755.19.

### B. *Novelty and Difficulty of the Issues*

The case required analysis of the application of § 5 of the Voting Rights Act of 1965, as amended, to the need for municipalities submitting annexation proceedings for preclearance prior to affording the electorate in the precleared areas the right to vote. Indianola had sought to annex subdivisions in earlier years without obtaining preclearance. Plaintiffs' suit was basically one to enjoin further elections until § 5 had been complied with and, secondly, to have annexed into the City of Indianola 9 subdivisions of black neighborhoods. The case was hotly fought at every stage of the proceedings. Indianola conceded nothing although it was apparent at an early date that its failure to submit annexation to the Department of Justice would preclude the electorate on those subdivisions from voting until preclearance was obtained. In justification of the considerable effort expended by plaintiffs' counsel in this case it must be pointed out that this was made necessary because of the recalcitrance on the part of the city officials who were more interested in preserving the status quo than in complying with federal statutes. It should be observed that the City had three attorneys employed to defend the case, at considerable cost, and is in no position to complain of the array of counsel engaged by plaintiffs. In any case, the three-judge court was called upon to render decisions concerning the application of § 5 of the Voting Rights Act over the strenuous objection of defendants, who took a meritless appeal to the Supreme Court of the United States. All of these legal steps necessarily involved outlays for attorneys' fees, both for attorneys employed by the City and for attorneys employed by the plaintiffs.

### C. *The Skill Requisite to Perform the Legal Services Properly*

The court finds that plaintiffs' counsel ably and skillfully performed the professional services rendered on behalf of their clients.

### D. *Preclusion of Other Employment by the Attorneys Due to Acceptance of the Case*

We agree with plaintiffs' counsel that acceptance of this case committed counsel

to a substantial understaking, necessitating the expenditure of a considerable amount of attorney time. However, we note that by far the largest blocks of time were spent by attorneys employed by the plaintiff class, i.e., McTeer, Stavis, Bixler and Scott-McLaughlin. The court is not unmindful of the fact that McTeer was employed by the Mississippi Action for Community Education (MACE) at a rate of $35.00 per hour plus reimbursement of expenses, on condition that such outlays be returned to the organization out of fees and expenses awarded to him. The court is cognizant of the fact that the representation demanded counsel's faithful attention at various times, but we are also aware that counsel were engaged in other civil rights actions during the time period in question. On balance, we conclude that plaintiffs' counsel were not unduly precluded by this representation from accepting other employment.

### E. *The Customary Fee*

" '[R]easonable fees' ... are to be calculated according to the prevailing market rates in the relevant community," that is, those rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. at 894–895 & n. 11, 104 S.Ct. at 1546–1548 & n. 11, 79 L.Ed.2d at 899–900 & n. 11; *see also Johnson*, 488 F.2d at 718; *Henry*, 603 F.Supp. 658, (N.D.Miss.1984).

As we have in the past, we decline counsel's invitation to reward their services at out-of-district rates: "we believe that the rates allowed by this court for legal work performed in this judicial district should reflect the customary fee here rather than the standard rates in Washington, D.C." *Henry, supra.*

The court is quite familiar with reasonable hourly rates prevailing in this judicial district for attorneys' services, and notes that such rates fall generally within the $60 to $100 per hour range, depending upon the experience, skill and reputation of the particular attorney involved. We have so held on numerous occasions. *E.g., Hen-*

*ry, supra; Jackson v. Hollowell*, No. GC73–51–WK, slip op. at 9 (N.D.Miss. Mar. 15, 1985) [Available on WESTLAW, DCTU database]; *Johnston v. Lucas*, No. GC82–46–WK–O, slip op. at 13 (N.D.Miss. Jan. 25, 1985) [Available on WESTLAW, DCTU database]; *Litten v. Burke*, No. WC81–168–WK–P, slip op. at 7 (N.D.Miss. Nov. 30, 1984) [Available on WESTLAW, DCTU database]; *Quarles v. St. Clair*, No. GC77–37– K, slip op. at 10 (N.D.Miss. July 2, 1984) [Available on WESTLAW, DCTU database].

### F. *Time Limitations*

Evidentiary hearings in the trial court were conducted on an expedited basis, imposing in many instances severe time limitations upon counsel. Plaintiffs' counsel further represent to the court that this action was treated as a priority case in their office, sometimes pre-empting other work.

### G. *The Results Obtained*

The court has previously commented upon the results obtained by counsel on behalf of the plaintiff class. For present purposes it is sufficient to reiterate that plaintiffs' counsel are responsible for, and should be credited with, achieving significant benefits for the black residents of the City of Indianola by vindicating the right of minority voters to participate meaningfully in municipal elections.

### H. *Experience, Reputation and Ability of the Attorneys*

Plaintiffs' counsel possess varying degrees of experience in voting rights litigation, and some of these attorneys, without doubt, enjoy greater reputations in this field than do others. All counsel competently rendered professional services on behalf of their clients. The hourly rate allowed each attorney reflects that attorney's degree of experience.

### I. *Undesirability of the Case*

Inasmuch as the attorneys involved in this case devote their practice almost exclusively to civil rights litigation, this action could hardly be considered "undesirable." Indeed, it is likely that counsel's reputations have been enhanced by their involvement in this case.

### J. Professional Relationship With the Client

This factor is not relevant in this case.

### K. Awards in Similar Cases

Our awards of $75, $85 and $100 per hour in this case fall within the range of prevailing rates in this judicial district and compare favorably with the hourly rates recently awarded in other civil rights cases before this court. *See, e.g., Henry, supra,* (awards of $65, $90 and $100 per hour); *Jackson v. Hollowell,* slip op at 10 ($75 per hour); *Johnston v. Lucas,* slip op. at 13 ($60 and $75 per hour); *Quarles,* slip op. at 10 ($75 per hour).

### L. Computation of the "Lodestar" Fee

Under the method adopted by the Fifth Circuit in *Copper Liquor II,* 624 F.2d at 583; *see also Graves v. Barnes,* 700 F.2d at 222; *Copper Liquor III,* 684 F.2d at 1092–93, directing the district court to give "special heed" to the *Johnson* factors of time and labor involved, the customary fee, the results obtained, and the experience, reputation and ability of counsel, in arriving at a "lodestar" figure, which may then be adjusted upward or downward on the basis of other relevant *Johnson* factors, we determine that an appropriate "lodestar" fee in this case is $159,575.00 as heretofore detailed.

### M. Expenses

Plaintiffs also seek an award of $32,164.37 for out-of-pocket litigation expenses. All reasonable expenses that would customarily be billed to a fee-paying client may, of course, be recovered by plaintiffs as prevailing parties under 42 U.S.C. § 1988. *See, e.g., Dowdell v. City of Apopka,* 698 F.2d 1181, 1192 (11th Cir.1983); *Loewen v. Turnipseed,* 505 F.Supp. 512, 517–19 (N.D.Miss.1980). The allowance of expenses aggregating $32,164.37 has been sufficiently mentioned in foregoing portions of this opinion so as to obviate any need for further comment.

Let an order issue accordingly.