David JORDAN and Sammie Chestnut, on behalf of the Greenwood Voters League, Individually and on behalf of others similarly situated, Plaintiffs,

v.

William A. ALLAIN, Governor of Mississippi, T.H. Campbell, III, Chairperson, Bill Harpole, Vice-Chairperson, J.C. "Con" Maloney, Secretary, and their successors in office, Joint Congressional Redistricting Committee; Brad Dye, Lieutenant Governor of Mississippi and President of the Senate; and Clarence B. "Buddie" Newman, Speaker of the House of Representatives, Defendants.

Owen H. BROOKS, Sarah H. Johnson, Rev. Harold R. Mayberry, Willie Long, Robert E. Young, Thomas Morris, Charles McLaurin, Samuel McCray, Robert Jackson, Rev. Carl Brown, June E. Johnson, and Lee Ethel Henry, individually and on Behalf of others similarly situated, Plaintiffs,

v.

William A. ALLAIN, Governor of Mississippi, Edwin L. Pittman, successor in office to William A. "Bill" Allain, Attorney General of Mississippi; Dick Molpus, successor in office to Edwin Lloyd Pittman, Secretary of State of Mississippi, in their official capacities and as members of the Mississippi State Board of Election Commissioners; State Board of Election Commissioners, Mississippi Democratic Executive Committee, Mississippi Republican Executive Committee, Defendants.

Nos. GC82–80–WK–O, GC82–81–WK–O.

United States District Court, N.D. Mississippi, Greenville Division.

April 1, 1985.

Frank R. Parker, Patricia Hanrahan, Sidney Bixler, Lawyers' Committee for Civil Rights Under Law, Washington, D.C., Johnnie E. Walls, Jr., Greenville, Miss., Robert B. McDuff, University, Miss., for Brooks plaintiffs.

Alvin O. Chambliss, North Miss. Rural Legal Services, Oxford, Miss., Willie Perkins, North Miss. Rural Legal Services, Greenwood, Miss., for Jordan plaintiffs.

Edwin L. Pittman, Atty. Gen. of Miss., Jackson, Miss., Jerris Leonard, Kathleen Heenan McGuan, Washington, D.C., Hubbard T. Saunders, IV, Champ Terney, Jackson, Miss., R. Scott Levanway, Jackson, Miss., for State defendants.

Michael B. Wallace, Jackson, Miss., for Republican defendants.

## MEMORANDUM OPINION

KEADY, District Judge.

The court presently has for consideration the motion of the *Brooks* plaintiffs,[1] as prevailing parties, for an award of attorneys' fees and litigation expenses incurred in this statutory and constitutional challenge to two Mississippi congressional redistricting plans, one of which was enacted by the state legislature and the other adopted on an interim basis by the three-judge court previously convened in this

---

1. *Brooks v. Allain,* No. GC82–81–WK–O, was consolidated with *Jordan v. Allain,* No. GC82–80–WK–O, shortly after commencement of these actions. Two plaintiff classes were certified and defined by the court as (1) all black residents and black registered voters of the State of Mississippi; and (2) all residents and registered voters of the State of Mississippi. The two groups of named plaintiffs were represented throughout the pendency of these proceedings by separate counsel, although counsel for the *Brooks* plaintiffs bore the primary responsibility for prosecution of the action. The *Jordan* plaintiffs have not applied for an award of attorneys' fees and expenses. Their failure to apply for such an award within thirty days of entry of final judgment bars the *Jordan* plaintiffs from any recovery. *See* N.D.Miss.R. C–13(2)(a).

cause.[2] This litigation was originally commenced under section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, the one-person, one-vote requirement of article I, section 2, and the fourteenth amendment to the United States Constitution, and was ultimately decided under section 2 of the Voting Rights Act, as amended in 1982, 42 U.S.C. § 1973 (Supp.1984). It resulted in the re-creation of Mississippi's historical Delta congressional district with a majority black voting age population after two evidentiary hearings and two appeals to the United States Supreme Court.

Plaintiffs now seek an attorneys' fee award totaling $350,749.00 [3] together with expenses of $70,102.78, against the State of Mississippi [4] and defendant Mississippi Republican Executive Committee (Republican defendants), pursuant to the Civil Rights Attorney's Fee Award Act of 1976, 42 U.S.C. § 1988,[5] and 42 U.S.C. § 1973*l* (e).[6] Additionally, the Republican defendants assert prevailing party status in the expenses in the amount of $24,986.58 [7] incurred since entry of final judgment on January 6, 1984, to be assessed jointly and severally against plaintiffs and their counsel. Republican defendants also seek sanctions of $5,165.98 against plaintiffs' counsel for Republican resistance to plaintiffs' instant motion for attorneys' fees pursuant to Fed.R.Civ.P. 11. We preface our analysis with a brief history of this litigation.

## I. Procedural History

In their complaint filed April 5, 1982, plaintiffs sought (1) an injunction against utilization of the state's 1981 legislatively enacted congressional redistricting plan, known as the "least change" plan,[8] until

---

**2.** The three-judge court, convened pursuant to 28 U.S.C. § 2284(a), was dissolved by order of the court on March 7, 1985, and all remaining issues regarding attorneys' fees and litigation expenses were remanded to the undersigned district judge for determination. Contrary to the suggestion of defendant Mississippi Republican Executive Committee, no § 2284(a) issues remain for resolution; hence, defendant's request to reconvene the three-judge court will be denied. *See Bond v. White,* 508 F.2d 1397, 1400–01 (5th Cir.1975).

**3.** This figure represents 1,555.45 hours of claimed compensable time expended by six attorneys and billed at hourly rates ranging from $75 to $135 ($180,236.75). Additionally, plaintiffs seek a 100% enhancement for all but 74.7 hours of the work performed (+ $170,512.25). Plaintiffs are represented by three attorneys (Mr. Parker, Ms. Hanrahan, Mr. Bixler) employed by the Lawyers' Committee for Civil Rights Under Law (Lawyers' Committee) in Washington, D.C., one attorney formerly associated with the Lawyers' Committee (Mr. McDuff), and a private practitioner (Mr. Walls) and a Lawyers' Committee attorney (Ms. Stewart) working in Mississippi.

**4.** Among those named as parties defendant were Mississippi's Governor, Attorney General, Secretary of State, and State Board of Election Commissioners (hereinafter collectively referred to as state defendants). Of course, where state executives are sued in their official capacities, as here, an award of attorneys' fees may be made to prevailing plaintiffs out of state funds. *Hutto v. Finney,* 437 U.S. 678, 693–94, 98 S.Ct. 2565, 2574–75, 57 L.Ed.2d 522 (1978); *Connor v.*

*Winter,* 519 F.Supp. 1337, 1343–44 (S.D.Miss. 1981) (three-judge court).

**5.** 42 U.S.C. § 1988 (1981) provides in pertinent part:

\*   \*   \*   \*   \*   \*

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

**6.** 42 U.S.C. § 1973*l* (e) (1981) provides:

(e) In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

**7.** This figure represents 272.05 hours expended by Republican counsel, Michael B. Wallace, Esquire, in pursuing post-judgment relief in the trial court, in prosecuting the Republican defendants' appeal to the Supreme Court and in defending plaintiffs' appeal, at an hourly rate of $75, for a total fee claim of $20,403.75, together with litigation expenses of $4,582.83.

**8.** A description of the "least change" plan, also referred to as S.B. 2001, is contained in the court's first opinion, *Jordan v. Winter,* 541 F.Supp. 1135, 1139 (N.D.Miss.1982) (three-judge court), *vacated and remanded sub nom. Brooks v. Winter,* 461 U.S. 921, 103 S.Ct. 2077, 77 L.Ed.2d 291 (1983).

the plan was precleared under section 5 of the Voting Rights Act;[9] (2) a prohibition against further use of the state's existing (1972) congressional plan because of population malapportionment allegedly violative of article I, section 2 and the fourteenth amendment to the United States Constitution; and (3) adoption of a court-ordered interim redistricting plan. *See Jordan v. Winter*, 541 F.Supp. 1135 (N.D.Miss.1982) (three-judge court), *vacated and remanded sub nom. Brooks v. Winter*, 461 U.S. 921, 103 S.Ct. 2077, 77 L.Ed.2d 291 (1983).

Plaintiffs were successful in each of these objectives, securing an injunction against utilization of the "least change" plan unless and until the plan was precleared in accordance with section 5, 541 F.Supp. at 1141–42; obtaining a prohibition against the further use of the malapportioned 1972 plan, *id.* at 1142; and facilitating the adoption of an interim plan for holding the 1982 Republican and Democratic party primaries and general election, *id.* at 1142–45. Although the interim plan initially adopted by the court, known as the "Simpson plan,"[10] was not favored by the plaintiff class, plaintiffs succeeded in obtaining the court's disapproval of interim plans urged by the state defendants. *Id.*[11]

Plaintiffs appealed the trial court's ruling to the Supreme Court, contending that

the Simpson plan unlawfully diluted black voting strength in the Second District by combining majority white "hill" counties with predominantly black Delta and part-Delta counties. The state defendants cross-appealed claiming error in the ruling. While these appeals were pending, Congress amended section 2 of the Voting Rights Act and the Supreme Court subsequently vacated and remanded this court's first decision for reconsideration in light of amended section 2. *Brooks v. Winter*, 461 U.S. 921, 103 S.Ct. 2077, 77 L.Ed.2d 291 (1983) (mem.).

After extensive briefing and a second evidentiary hearing in December 1983, involving for the first time the participation of the Republican defendants on an active basis,[12] the trial court concluded that the structure of the Second District under the court-ordered Simpson plan unlawfully diluted black voting strength in violation of amended section 2. *Jordan v. Winter*, 604 F.Supp. 807, 808 (N.D.Miss.1984) (memorandum opinion of the three-judge court supplementing bench ruling of December 21, 1983, and final judgment of January 6, 1984), *aff'd mem. sub. nom. Mississippi Republican Executive Comm. v. Brooks*, — U.S. —, 105 S.Ct. 416, 83 L.Ed.2d 343 (1984). However, the court again rejected plaintiffs' proposals for creation of a 65% black dis-

**9.** The Attorney General of the United States interposed a section 5 objection to the "least change" plan on March 30, 1982. Two days after initiation of this litigation, on April 7, 1982, the state filed a declaratory judgment action in the United States District Court for the District of Columbia, seeking judicial preclearance of the "least change" plan. *See Mississippi v. Smith*, No. 82–0956 (D.D.C.). This effort was ultimately abandoned.

**10.** The Simpson plan, developed by the staff of the joint Senate-House Committee for Congressional Redistricting on motion of Representative James C. Simpson, and urged by the AFL–CIO as amicus curiae, is described at 541 F.Supp. at 1144–46.

**11.** Plaintiffs sought adoption of either one of two plans drawn by Senator Henry J. Kirksey, a black legislator, both of which plans combined portions of the City of Jackson with counties in the Delta area to produce black majority dis-

tricts of approximately 65%. *See* 541 F.Supp. at 1140. The court rejected both plans as "obvious racial gerrymander[s]." *Id.* at 1144. The state defendants urged retention on an interim basis of either the unprecleared "least change" plan, the malapportioned 1972 plan, or a court-drawn plan slightly modifying one of these two plans. *Id.* at 1141. The court likewise rejected the state's arguments in adopting the Simpson plan. *Id.* at 1142, 1145.

**12.** The Republican and Democratic state executive committees were made defendants because of their responsibility for conducting primary and general elections in Mississippi. Both of these defendants consented to the entry of judgment against them, agreeing to be bound by any decree of the court with regard to redistricting. The Republican defendants apparently reconsidered their position following the 1982 elections, thereafter taking an active role in the litigation and appeals. The Democratic defendants have remained on the sidelines.

trict combining portions of metropolitan Jackson with rural Delta counties, *see* 604 F.Supp. at 814–15, and ordered into effect an interim plan, fashioned by the court with the aid of the parties, which contained a mostly-Delta district with a total black population of 58.3%.[13]

Following promulgation of the court plan in January 1984, the Republican defendants moved the trial court to amend its judgment, specifically attacking the constitutionality of section 2 as amended and seeking reinstatement of the Simpson plan. The court overruled the motion, and all parties active in the litigation—the *Brooks* plaintiffs and both Republican and state defendants—appealed the trial court's second decision to the Supreme Court.[14] The Republican defendants, joined by the state defendants, thereafter sought a stay of the January 6, 1984, judgment and reinstatement of the Simpson plan. The court again rejected defendants' contentions and denied the relief requested. The Supreme Court likewise declined to stay the judgment. After extensive briefing in the three docketed appeals, the Supreme Court summarily affirmed the judgment of the district court. *Mississippi Republican Executive Comm. v. Brooks*, — U.S. —, 105 S.Ct. 416, 83 L.Ed.2d 343 (1984). The instant attorneys' fees motions followed.

## II. Applicability of §§ 1988 and 1973*l* (e)

■ At the outset, we reject the contention of the Republican defendants that attorneys' fees for time spent in pursuit of "pure" section 2 remedies, without other statutory or constitutional foundation (specifically, attorney work performed in connection with the second evidentiary hearing), are not recoverable by a prevailing party under the plain language of either § 1988, which allows an award of fees to a prevailing party in proceedings to enforce certain enumerated civil rights statutes, *see supra* note 5, or § 1973*l* (e), which provides

fees in successful proceedings to enforce constitutional voting guarantees, *see supra* note 6. The legislative histories of both § 1973*l* (e) and amended § 2 (42 U.S.C. § 1973), as well as decisional law awarding fees in voting rights actions, make clear beyond peradventure that a prevailing voting rights litigant is entitled to recover attorneys' fees regardless of the statutory or constitutional predicate of the action. As the House sponsor of Section 402 of the Voting Rights Act Amendments of 1975 (subsequently codified as 42 U.S.C. § 1973*l* (e)) explained during floor debate on the section:

The provision for attorneys' fees in Section 402 is available in "any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment." Such litigation would include not only suits based directly on those amendments, but also cases based on statutes passed pursuant to them, such as 42 U.S.C. § 1971, 1973, and 1983. The phrase used are words of inclusion, not limitation.

121 Cong.Rec. H4735 (daily ed. June 2, 1975) (remarks of Congressman Robert Drinan). Similarly, the House Report on amended section 2 declares Congress' intent that private litigants who establish a violation of the statute "are entitled to attorneys' fees under 42 U.S.C. §§ 1973*l* (e) and 1988." H.R.Rep. No. 97th Cong., 1st Sess. 32 (1981).

Courts presented with fee requests submitted by prevailing parties in actions brought under the Voting Rights Act have routinely applied the fee statutes in question. In *Posada v. Lamb County*, 716 F.2d 1066 (5th Cir.1983), an action brought under both section 5 and article I, section 2, the Fifth Circuit stated without elaboration that "[a]ttorneys fees are available under § 1973*l* (e) of the Voting Rights Act and § 1988 to 'prevailing parties' in voting rights litigation." 716 F.2d at 1071; *see*

---

**13.** The court plan is described in detail in an addendum to the April 16, 1984, opinion. *Jordan v. Winter*, 604 F.Supp. at 816–20.

**14.** The three appeals were docketed in the Supreme Court as *Mississippi Republican Executive Comm. v. Brooks*, No. 83–1722; *Brooks v. Allain*, No. 83–1865; and *Allain v. Brooks*, No. 83–2053.

*also Garcia v. Guerra,* 744 F.2d 1159, 1161 (5th Cir.1984) (fees awarded to successful section 5 litigants); *Commissioners Court of Medina County v. United States,* 719 F.2d 1179, 1179, 1181–82 (D.C.Cir.1983) (fees may be recovered by private intervenors in judicial preclearance proceeding); *Donnell v. United States,* 682 F.2d 240, 248–49 (D.C.Cir.1982) (same), *cert. denied,* 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983).

Finally, we observe that awarding attorneys' fees to prevailing parties in litigation brought to enforce statutory, rather than constitutional, voting guarantees furthers the congressional purpose in enacting both §§ 1973*l* (e) and 1988 by "encouraging private litigants to act as 'private attorneys general' in seeking to vindicate the civil rights laws." *Donnell,* 682 F.2d at 245. As the Senate Report on § 1973*l* (e) stated, "Congress depends heavily upon private citizens to enforce the fundamental rights involved. The awards are a necessary means of enabling private citizens to vindicate these Federal rights." S.Rep. No. 295, 94th Cong., 1st Sess. 40 (1974), *reprinted in* [1975] U.S.Code Cong. & Ad.News 774, 807, *quoted in Donnell,* 682 F.2d at 245. The statutory interpretation urged by the Republican defendants is directly contradictory to the stated purpose of § 1973*l* (e) and would serve to hinder, rather than encourage, private enforcement of the Voting Rights Act.

### III. Which Party Prevailed?

The adverse motions of the *Brooks* plaintiffs and the Republican defendants for awards of attorneys' fees brings into sharp focus the statutory mandate of §§ 1988 and 1973*l* (e) that fees and expenses may be recovered only by a *prevailing* civil rights litigant. The phrase "prevailing party" carries the same general meaning under both acts. S.Rep. No. 295, 94th Cong., 1st Sess. 40 (1974), *reprinted in* [1975] U.S.Code Cong. & Ad.News 774, 807; *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40, 50 n. 7 (1983); *Posada v. Lamb County,* 716 F.2d at 1071. Plaintiffs assert that they pre-

vailed in all aspects of this litigation, with the sole exception of their second appeal in No. 83–1865 in which they sought to overturn the court-drawn boundaries of the Second District in favor of a 65% black district, and that they should be compensated accordingly. Plaintiffs' counsel frankly concede that they were unsuccessful on that appeal; the affidavits submitted in support of their fee request do not catalogue time spent in pursuing plaintiffs' appeal in No. 83–1865, but do include hours devoted to resisting defendants' appeals in Nos. 83–1722 and 83–2053.

The state defendants make no attempt to controvert plaintiffs' claim of success in any regard other than on the first appeal, arguing that the Supreme Court's vacation and remand for reconsideration in light of amended section 2 was prompted not by plaintiffs' efforts, but by the Solicitor General's *amicus curiae* brief urging such a disposition. For reasons expressed in Part IV, A, 3 below, we agree with state defendants that compensation claimed by plaintiffs' counsel for work performed in furtherance of the first Supreme Court appeal should be reduced to reflect plaintiffs' limited success.

The Republican defendants claim that it was they, and not the *Brooks* plaintiffs, who prevailed at the second evidentiary hearing and on the second appeal, and are therefore entitled to fees and expenses as prevailing defendants. The court is thus called upon to make the "threshold determination" of who actually prevailed and to what extent and at what stages of the litigation each party may be considered successful within the intendment of the governing statutes. *See Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 50 (1983).

### A. The Brooks Plaintiffs

In assessing plaintiffs' claims, we are guided by the *Hensley* Court's recognition that, " 'plaintiffs may be considered "prevailing parties" for attorneys' fees purposes if they succeed on any significant issue in litigation which achieves some of benefit the parties sought in bringing

suit.'" 461 U.S. at 433, 103 S.Ct. at 1939, 76 L.Ed.2d at 50 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)). There can be little doubt that plaintiffs have easily crossed the *Hensley* threshold.

Neither group of defendants disputes plaintiffs' success in securing injunctions against use of the unprecleared "least change" plan or the malapportioned 1972 plan. Nor can it be denied that plaintiffs brought about a fundamental realignment in Mississippi's congressional districts, thereby vindicating the voting rights of black Mississippians. The trial court's adoption of the Simpson plan in 1982 eliminated the horizontal dismemberment of the Delta; in 1983, the court concluded that the combination of certain majority white counties with black majority Delta counties unlawfully diluted black voting strength in violation of section 2. The end result was promulgation of the first congressional redistricting plan in Mississippi since passage of the Voting Rights Act that contained a district with a majority black voting age population.

The fact that the relief ultimately granted plaintiffs was not fully commensurate with that requested, is, while relevant, not a controlling factor. *Hensley* teaches that fees should not be denied or reduced "simply because the plaintiff failed to prevail on every contention raised in the lawsuit," so long as the attorney hours expended are reasonable in view of the limited success achieved. 461 U.S. at 435, 103 S.Ct. at 1940, 76 L.Ed.2d at 52. Further, in *Commissioners Court of Medina County v. United States*, 719 F.2d 1179 (D.C.Cir. 1983), the court observed that, in the context of a section 5 judicial preclearance proceeding, the county's failure to adopt the preferred plan of minority voters and the Attorney General's approval of the new county plan over the minority voters' objections "does not dilute appellants' claim to 'prevailing party' status." 719 F.2d at 1181.

The Republican defendants argue that plaintiffs are not entitled to fees for work performed in relation to the second appeal, ignoring the fact that plaintiffs have not requested compensation for pursuing their own appeal, but only for defending the two appeals taken by the Republican Party and the state defendants. In this regard, Republican reliance on *Hanrahan v. Hampton*, 446 U.S. 754, 758–59, 100 S.Ct. 1987, 1989–90, 64 L.Ed.2d 670 (1980) (attorneys' fees should not be awarded where no actual relief is secured in appellate court), is misplaced. We therefore find as a fact, and hold as a matter of law, that the *Brooks* plaintiffs are the prevailing parties in this action within the meaning of §§ 1988 and 1973*l* (e), and are thus entitled to recover reasonable attorneys' fees, subject to adjustment for the limited success achieved on the first appeal.

### B. The Republican Defendants

■ Consistent with our conclusion that the *Brooks* plaintiffs obtained significant relief in this action, we determine that there is no basis in fact or in law for either awarding attorney's fees and litigation expenses to the Republican defendants or assessing Rule 11 sanctions against the *Brooks* plaintiffs or their counsel. First, the Republican defendants clearly cannot be considered a "prevailing party" within the meaning of §§ 1988 or 1973*l* (e), with the possible limited exception of defending the *Brooks* plaintiffs' appeal in No. 83–1865. While the Republican defendants now profess post-election satisfaction with the 1984 court-ordered plan, these defendants vigorously opposed abandonment of the Simpson plan prior to and during the December 1983 evidentiary hearing and, as noted above, they unsuccessfully attempted to stay implementation of the new plan and reinstate the Simpson plan on at least two occasions following entry of judgment. Nor were these defendants successful either in their attempt to secure a stay pending an appeal in the Supreme Court or on the merits of their appeal in No. 83–1722.

Even were we to consider the Republican defendants a "prevailing party," they fall far short of establishing, as they must in order to recover attorney's fees against an unsuccessful civil rights plaintiff, that ei-

ther the underlying litigation or the second appeal was "vexatious, frivolous, or brought to harass or embarrass the defendant." *Hensley*, 461 U.S. at 429 n. 2, 103 S.Ct. at 1937 n. 2, 76 L.Ed.2d at 48 n. 2 (1983); *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). The Republican defendants' motion for an award of attorney's fees and litigation expenses will therefore be denied.

Likewise, the Republican defendants are not entitled to an assessment of Rule 11 sanctions against plaintiffs' counsel for resisting the *Brooks* plaintiffs' attorneys' fees motion, as they have failed to establish that the *Brooks* plaintiffs' motion is not "well grounded in fact and ... warranted by existing law or a good faith argument" or is interposed for an "improper purpose." Fed.R.Civ.P. 11. Indeed, plaintiffs' motion raises serious questions as to the proper allocation of responsibility for payment of a fee award between state and private defendants, as will be addressed below.

## IV. Reasonableness of Plaintiffs' Fee Request

*Hensley* dictates that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 461 U.S. at 433, 103 S.Ct. at 1939, 76 L.Ed.2d at 50; *see also Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 1543, 79 L.Ed.2d 891, 895 (1984). This initial calculation may then be adjusted upward or downward by the district court to account for such factors as either exceptional or limited success and the contingent nature of the lawsuit. *Hensley*, 461 U.S. at 434–37, 103 S.Ct. at 1940–41, 76 L.Ed.2d at 51–53. Similarly, the Fifth Circuit has directed the

district courts to give "special heed" to the *Johnson*[15] factors of time and labor involved, the customary fee, the results obtained, and the experience, reputation and ability of counsel, in arriving at a "lodestar" figure, which should then be adjusted on the basis of other relevant *Johnson* factors. *Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575, 581–84 (5th Cir. 1980) (*Copper Liquor II* ); *see also Graves v. Barnes*, 700 F.2d 220, 222 (5th Cir.1983); *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1092–93 & n. 11 (5th Cir. 1982) (*Copper Liquor III* ), *modified in part en banc*, 701 F.2d 542 (5th Cir.1983).

After considering memoranda of law and affidavits and statements of counsel regarding the reasonableness of plaintiffs' fee request, the court, pursuant to the guidelines articulated in *Hensley*, 461 U.S. at 433–37, 103 S.Ct. at 1939–41, 76 L.Ed.2d at 50–53, and *Johnson*, 488 F.2d at 717, as modified by *Copper Liquor II*, 624 F.2d at 581–84, and *Copper Liquor III*, 684 F.2d at 1092–97, and as affected by *Blum v. Stenson*, 465 U.S. at ——–——, 104 S.Ct. at 1548–50, 79 L.Ed.2d at 901–03 (certain *Johnson* factors irrelevant to court's consideration of request for enhancement of fee), finds as follows.

### A. Time and Labor Required

As stated, plaintiffs' counsel seek compensation for 1555.45 hours expended by six attorneys at various stages of this litigation. This total includes 61 hours expended by two attorneys in mounting private opposition to section 5 preclearance of the "least change" plan prior to commencement of this action;[16] 335.25 hours spent by four attorneys in preparation for and during the first evidentiary hearing;[17] 150 hours on the first Supreme Court appeal by three attorneys;[18] 715.7 hours in prepara-

---

**15.** *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974).

**16.** *Preclearance Objection:*

| | | |
|---|---|---|
| Frank R. Parker (12/28/81–2/26/82) | 18.0 | hours |
| Robert B. McDuff (2/17–26/82) | 43.0 | |
| | 61.0 | |

**17.** *First Evidentiary Hearing:*

| | |
|---|---|
| Parker (4/1–6/11/82) | 188.95 hours |
| Patricia Hanrahan (5/26/82) | 2.20 |
| McDuff (3/31–6/1/82) | 57.00 |
| Johnnie Walls (4/2–6/1/82) | 87.10 |
| | 335.25 |

**18.** *First Supreme Court Appeal:*

tion for and during the second evidentiary hearing by five attorneys;[19] 147.9 hours devoted to questions of post-judgment relief in the trial court and on the second Supreme Court appeal by four attorneys;[20] and 145.6 hours expended by four attorneys in preparing plaintiffs' motion for an award of attorneys' fees.[21] We consider each of these items seriatim.

### 1.

The state defendants object to plaintiffs' inclusion of 61 hours spent by Messrs. Parker and McDuff in opposing, on behalf of private parties, section 5 preclearance of the state's "least change" plan prior to initiation of this lawsuit. In urging the Attorney General to enter such an objection, a course of action which was in fact taken by the Attorney General, counsel prepared three comprehensive section 5 comment letters which discussed in great detail the legislative history of the "least change" plan, analyzed its discriminatory impact, and presented legal argument against use of Mississippi's 1966 and 1972 redistricting plans as benchmarks to determine whether the "least change" plan had a discriminatory effect.

These defendants correctly state that the Fifth Circuit has not yet conclusively determined whether attorney time spent in private opposition to section 5 preclearance is properly compensable under the relevant fee statutes. *See Posada v. Lamb County,* 716 F.2d at 1073–74. In *Posada,* the court assumed, without deciding, that in an appropriate case such private participation in the administrative process could be compensable. In so doing, the court articulated a stringent standard which preclear-

ance opponents must meet to show entitlement to a fee award:

> [I]f fees can be obtained at all for private opposition mounted in a preclearance review, which review resulted in the Attorney General's expression of dissatisfaction with the plan, the award must be justified by a showing that the private objectors' participation, through particularly astute criticism or creative legal argument, changed the result that the Attorney General would otherwise have reached. We will not presume that the Attorney General has failed adequately to satisfy his statutory obligations to enforce the public interest in compliance with the voting rights legislation, or that the reservations the Attorney General voiced would have passed unnoticed absent objections filed by private parties. [citations omitted]. *Absent evidence that the objectors' work had a substantial independent effect on the outcome of the preclearance review, the threshold burden to justification for an award of fees for preclearance participation has not been met.*

*Posada,* 716 F.2d at 1075 (citing *Donnell,* 682 F.2d at 248–49) (our emphasis).

The *Brooks* plaintiffs acknowledge the difficulty in meeting *Posada's* heavy evidentiary burden, as neither they nor this court are privy to the internal decision-making processes of the Justice Department; plaintiffs thus attempt to satisfy *Posada* by quoting from the Attorney General's section 5 objection letter, which makes reference to the opposition of these private parties. However, such proof, standing alone, is clearly insufficient to

| | | |
|---|---|---|
| Parker (6/11/82–5/18/83) | 145.5 | hours |
| Hanrahan (6/16/82) | 1.0 | |
| McDuff (6/10–9/15/82) | 3.5 | |
| | 150.0 | |

**19.** *Second Evidentiary Hearing:*

| | | |
|---|---|---|
| Parker (5/25/83–1/9/84) | 145.5 | hours |
| Sidney R. Bixler (11/5/83–1/7/84) | 191.8 | |
| Hanrahan (8/23/83–1/5/84) | 155.3 | |
| McDuff (11/23–12/21/83) | 52.5 | |
| Walls (5/20/83–1/8/84) | 22.5 | |
| | 715.7 | |

**20.** *Post-Judgment Relief in the Trial Court and second Supreme Court Appeal:*

| | | |
|---|---|---|
| Parker (1/13–11/13/84) | 144.8 | hours |
| Hanrahan (1/20/84) | .3 | |
| McDuff (1/5–1/23/84) | 1.9 | |
| Walls (1/23/84) | .4 | |
| | 147.4 | |

**21.** *Preparation of Attorneys' Fees Motion:*

| | |
|---|---|
| Parker (1/26–2/6/84; 12/6–12/12/84; 12/13/84–3/6/85) | 112.2 |
| Hanrahan (1/5–2/1/84) | 24.0 |
| McDuff (1/23–1/25/84) | 3.4 |
| Nausead Stewart (2/10–3/5/85) | 6.0 |
| | 145.6 |

establish, as plaintiffs must, that responsibility for the Attorney General's action should be credited to them. Indeed, under similar facts, the court in *Posada* rejected the plaintiffs' claims of victory predicated on an objection letter filed by the Attorney General making reference to materials supplied by the private opponents. The court's evaluation of the *Posada* plaintiffs' participation applies with equal force in the case *sub judice*:

> It is quite possible that their extensive comment assisted the Attorney General in organizing the pertinent materials, identifying the problem areas and crystalizing the issues. But there is no evidence that their submission carried the Attorney General beyond the analysis he would have otherwise have undertaken.

716 F.2d at 1075. We are constrained to hold that the *Brooks* plaintiffs have failed to meet their burden of proof with regard to the significance of their participation in the preclearance process; accordingly, 18 hours claimed by Mr. Parker and 43 hours claimed by Mr. McDuff must be excluded from their compensable time.

### 2.

■ Plaintiffs' counsel's preparation for and participation in the first trial in May 1982, including the drafting of post-trial briefs, consumed 335.25 attorney hours. Republican defendants have virtually no interest in this aspect of the litigation and state defendants have only minor objections to the time logged. Their primary argument is that some of the hours charged against them are more properly attributable to other parties over whom they exercised no control; insofar as these defendants object to time spent by plaintiffs' counsel in reviewing pleadings generated by the Republican and Democratic defendants and the AFL–CIO amicus brief during this period, we believe that this time (6.9 hours spent by Messrs. Parker and Walls and unspecified portions of 15 hours spent by Mr. Walls) is sufficiently related to plaintiffs' prosecution of their claims against the state defendants, who at all times assumed the primary responsibility for defending the litigation, to justify compensation from the state treasury.

However, we are concerned that the hours claimed by Mr. Walls during this period (87.1), devoted in large measure to the review of pleadings prepared by others, conferences and other purely administrative matters, is duplicative. We therefore reduce his claim by 50% (−43.55 hours).

After careful review of the other attorney affidavits covering this period of the litigation, we are convinced that the time expended was neither excessive nor duplicative, and should thus be allowed. Although, as we have previously observed, plaintiffs did not obtain the full relief which they sought at this stage of the proceedings, no further reduction of the time claimed is warranted due to the significant success achieved and the enhanced relief obtained following remand.

### 3.

■ The claimed 150 hours spent on the first appeal should be substantially reduced due to the limited nature of plaintiffs' success in the Supreme Court. A large number of these hours (Parker: 34; Hanrahan: 1) are easily segregated from the total as having been devoted to a wholly unsuccessful endeavor—plaintiffs' application for stay of the district court judgment pending appeal, which the Supreme Court denied—and will thus be disallowed. We find suspect, and therefore exclude as unreasonable, an additional 23.5 hours claimed by Mr. Parker for two trips to Greenwood, Mississippi, to consult with clients during the pendency of this appeal. It is difficult to conceive why counsel's physical presence was required in Greenwood at such a time or, at the very least, why local counsel could not have handled the matter.

■ Plaintiffs' claim for the remaining 91.5 hours (Parker: 88; McDuff: 3.5) spent on the merits of the appeal again raises the related issues of "prevailing party" status and the actual degree of success achieved by plaintiffs. While there can be little doubt that the ultimate result of the appeal—remand for a second evidentiary

hearing—favored plaintiffs' position, it is far from certain that plaintiffs themselves were responsible for that result or, stated differently, that their "success" can be attributed to the claimed expenditure of time. Rather, while we acknowledge the peril inherent in second-guessing the motivation of another tribunal, it appears from the record available to this court that the Supreme Court's remand in *Brooks v. Winter*, 461 U.S. 921, 103 S.Ct. 2077, 77 L.Ed.2d 291 (1983), was prompted by Congress' amendment of section 2, which occurred after entry of judgment by the district court, and not by plaintiffs' arguments advanced in the Supreme Court. Indeed, the issues raised in plaintiffs' jurisdictional statement in *Brooks v. Winter*, No. 82–233, were not addressed by the Supreme Court in its disposition of the case. 461 U.S. at 921, 103 S.Ct. at 2077. On November 1, 1982, the Court invited the Solicitor General to file a brief in the pending appeals expressing the view of the United States. *Brooks v. Winter*, 459 U.S. 965, 103 S.Ct. 290, 74 L.Ed.2d 275 (1982). The Solicitor General suggested in his brief that the case be remanded so that the trial court could reconsider the Simpson plan in light of amended section 2. The plaintiffs did not propose such a disposition.

Furthermore, it cannot be said that plaintiffs were successful on the *merits* at the appellate level, although it is true that had the *Brooks* plaintiffs never taken the first appeal, the first judgment would not have been vacated nor further relief granted in a second evidentiary hearing. In *Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), the Supreme Court disallowed as premature a fee award where plaintiffs had not prevailed on the merits of their case in the appellate court, but had merely secured a reversal and remand for new trial. *Id.* at 758–59, 100 S.Ct. at 1989–90. The instant case differs somewhat from *Hanrahan* in that plaintiffs here were eventually successful in obtaining further relief. Because of the mixed results of counsel's time expenditure on the first Supreme Court appeal, we reduce the remaining 91.5 hours by one-half. We thus find that Mr. Parker should be compensated for 44 hours and Mr. McDuff 1.75 hours expended during this period.

■ We emphatically reject the argument of Republican defendants, made with reference to the second appeal but equally applicable here, that the Supreme Court's partial reservation unto itself of the right to tax costs in that Court, embodied in its Rule 50, deprives this court, or any other lower court, of jurisdiction to assess attorneys' fees for work performed on appeal to the Supreme Court. It is well established that a district court may award prevailing civil rights plaintiffs attorneys' fees for work performed at the appellate level. *See, e.g., Gresham Park Community Org. v. Howell*, 652 F.2d 1227, 1248 n. 61 (5th Cir.1981); *Johnson v. State of Mississippi*, 606 F.2d 635, 638–39 (5th Cir.1979). More to the point, in *Kirchberg v. Feenstra*, 708 F.2d 991 (5th Cir.1983), the Fifth Circuit expressly held that prevailing civil rights litigants were entitled to compensation for work performed in the Supreme Court, and remanded the case to *the district court* with instructions to make such an award. 708 F.2d at 1001; *see also Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 954–55 (1st Cir.1984) (routinely awarding compensation for work performed before Supreme Court); *Henry v. First National Bank*, 603 F.Supp. 658, 666 (N.D.Miss.1984) (same).

### 4.

■ Notwithstanding the involvement of five attorneys, including their presence at trial, and the relatively large number of hours claimed by counsel for work performed in connection with the second evidentiary hearing (715.7), we conclude after close examination that the time spent, with minor exceptions, was reasonable under the circumstances and that counsel should be compensated accordingly. A considerable amount of the time claimed was devoted to the research of novel issues and preparation of extensive pretrial memoranda which proved helpful to the court. Other large blocks of time were spent in interviewing

witnesses and taking depositions, all of which strengthened plaintiffs' case at trial.

However, we deduct 4 hours claimed by Mr. Parker on November 15, 1983, and a total of 18 hours claimed by Mr. Bixler on November 15, 16 and 17, 1983, for unnecessary duplication in the preparation for and attendance at certain evidentiary depositions taken on the dates noted. As for the attendance of five lawyers at trial, we observe that all counsel participated to some degree, although primary responsibility was clearly borne by Mr. Parker, and that the participating defendants were represented by a total of five attorneys, four representing the state defendants and one representing the Republican defendants. All other objections not specifically mentioned herein have been considered by the court and rejected.

### 5.

As previously stated, plaintiffs seek no compensation for time spent in prosecuting their second appeal to the Supreme Court in No. 83–1865, but do claim a total of 147.4 hours spent to oppose defendants' motions for post-judgment relief in the trial court and to resist defendants' appeals in Nos. 83–1722 and 83–2053. Plaintiffs were successful in both aspects, protecting the significant relief they obtained in the trial court from the several collective efforts of defendants to reinstate the Simpson plan. In view of the substantial number of hours devoted to that end by defendants' counsel, we believe the time spent by plaintiffs' counsel to be entirely reasonable. However, consistency demands that we make minor reductions of time, as follow, for hours clearly spent in furtherance of plaintiffs' own appeal: .4 hours spent by Mr. Walls discussing possible appeal with co-counsel (Jan. 23, 1984); and .9 hours similarly expended by Mr. McDuff (Jan. 5, 10, 23 & 24). Additionally, we subtract .5 hours from Mr. Parker's total which was erroneously included in his second affidavit without documentation.

Defendants' objections to time expended by plaintiffs' counsel in opposing post-judgment relief in this court have a distinctly hollow ring; in the opinion of the court, these defendants, and particularly the Republican Party, crossed the line separating hard-fought litigation from needless multiplication of proceedings, at great waste of both the court's and the parties' time and resources. With regard to state defendants' objection that they should not be charged with time spent by plaintiffs' counsel in responding to Republican efforts to overturn the district court's judgment, we simply observe that the state defendants joined in the Republican motions for post-judgment relief and must assume responsibility therefor.

### 6.

The Supreme Court's admonition that "[a] request for attorney's fees should not result in a second major litigation," *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941, 76 L.Ed.2d at 53, has been reduced to little more than wishful thinking in the instant case. The court has literally been flooded with paper, more easily measurable in pounds than in pages, from all parties. Plaintiffs have filed an original fee motion, an amended motion, a second amended motion and a supplemental motion, together with supporting briefs and evidentiary materials; in all but one instance plaintiffs seek additional compensation for preparation of their submissions, devoting an aggregate of 145.6 hours, comprising nearly 10% of the total time invested in the litigation, to recovery of attorneys' fees.

While work performed in preparing a fee request is plainly compensable, *Kirchberg,* 708 F.2d at 1001; *Ridell v. National Democratic Party,* 624 F.2d 539, 547 (5th Cir. 1980), hours so expended are no less subject to the stricture of reasonableness than are those devoted to the merits of the case. Plaintiffs' briefs on the attorneys' fees issue—and we count a minimum of five, totaling 94 pages—address for the most part, settled, fundamental questions of law with which counsel are doubtless intimately familiar. Plaintiffs' first and second briefs are, to a large degree, needlessly repetitive. Research and writing of the three briefs for which Mr. Parker and Ms. Han-

rahan seek compensation consumed at least 120 of the hours documented, an extravagant expenditure of time for which the court can find little justification.[22] Accordingly, the court reduces by 40% the hours claimed by Mr. Parker (112.2 hours claimed reduced to 67.3) and Ms. Hanrahan (24 hours claimed reduced to 14.4). Additionally, the court disallows in their entirety the 6 hours claimed by Ms. Stewart, as the work she performed was clearly of a non-legal nature.

### Summary

In accordance with the specific hourly deductions the court has made above, we conclude that a total of 1262.35 hours expended by plaintiffs' counsel are properly compensable as follows:

| Attorney | Hours Claimed | Deduction | Total Compensable Hours |
|---|---|---|---|
| Parker | 903.55 | − 168.9 | 734.65 |
| Hanrahan | 191.80 | − 10.6 | 181.20 |
| Bixler | 182.8 | − 18.0 | 164.80 |
| McDuff | 161.30 | − 45.65 | 115.65 |
| Walls | 110.0 | − 43.95 | 66.05 |
| Stewart | 6.0 | − 6.0 | 0 |
| | 1,555.45 | | 1,262.35 |

### B. Novelty and Difficulty of the Issues

This case required consideration of long-established legal principles as well as application of newly-enacted statutory criteria in evaluating plaintiffs' section 2 claims on remand. With regard to plaintiffs' request for an injunction blocking utilization of the patently unconstitutional 1972 plan and the unprecleared "least change" plan, we agree with defendants that these were issues upon which it was "hardly conceivable that the plaintiffs could possibly lose." *Flowers v. Wiley*, 675 F.2d 704, 706 (5th Cir. 1982).

However, plaintiffs were put to far greater difficulty in establishing a section 2 violation at the second evidentiary hearing and in securing adoption of a redistricting

plan which contained a majority black voting age population. Plaintiffs correctly point out that whether the trial court would conclude that its own court-ordered remedy (the Simpson plan) was itself violative of section 2, a result clearly not mandated by the Supreme Court's remand, was highly speculative. Finally, the court was called upon to consider the novel question of section 2's constitutionality.

### C. The Skill Requisite to Perform the Legal Services Properly

The court finds that plaintiffs' counsel ably and skillfully performed the professional services rendered on behalf of their clients.

### D. Preclusion of Other Employment by the Attorneys Due to Acceptance of the Case

We agree with plaintiffs' counsel that acceptance of this case committed counsel to a major undertaking, necessitating the expenditure of a considerable amount of attorney time. However, we note that by far the largest blocks of time were spent by attorneys employed by the Lawyers' Committee (Parker, Hanrahan and Bixler and, to a lesser extent, McDuff), an organization whose primary function is to undertake just such litigation. The court is cognizant of the fact that the instant representation demanded counsel's faithful attention during peak periods of activity, but we are also aware that counsel were engaged in other civil rights actions during the time period in question. On balance, we conclude that plaintiffs' counsel were not unduly precluded by this representation from accepting other employment.

### E. The Customary Fee

██ " '[R]easonable fees' . . . are to be calculated according to the prevailing market rates in the relevant community," that is, those rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and

---

**22.** The court is cognizant that the undue expenditure of time by plaintiffs' counsel in furtherance of their fee request was prompted in part by defendants' vigorous opposition to the motion, and by the filing of counter-motions by the Republican defendants. Even so, we remain convinced that entirely too much time was devoted to the fee question by plaintiffs' counsel.

reputation." *Blum v. Stenson,* 104 S.Ct. at 1547 & n. 11, 79 L.Ed.2d at 899–900 & n. 11; *see also Johnson,* 488 F.2d at 718; *Henry,* 603 F.Supp. at 666. Plaintiffs' counsel seek compensation at rates ranging from $75 to $135 per hour, depending upon each individual attorney's experience, as well as upon the location of his or her practice. Three attorneys, Mr. Parker, Ms. Hanrahan and Mr. Bixler, urge that the "relevant community" to which this court should look in selecting a reasonable hourly rate is Washington, D.C., their primary area of practice, rather than the Northern District of Mississippi. Consequently, they suggest that appropriate hourly rates for their services would be $135, $100, and $100, respectively. Messrs. McDuff and Walls ask to be compensated at the "local" rate of $75 per hour.

As we have in the past, we decline counsel's invitation to reward their services at out-of-district rates: "we believe that the rates allowed by this court for legal work performed in this judicial district should reflect the customary fee here rather than the standard rates in Washington, D.C." *Henry,* 603 F.Supp. at 666. Plaintiffs' argument that their Washington counsel should be compensated at Washington rates because the state defendants also retained Washington counsel, Jerris Leonard and Kathleen H. McGuan, is unpersuasive, particularly in view of the fact that defendants' counsel were compensated at rates substantially below what their services would command in Washington, $85 and $50 per hour, respectively. *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760 (7th Cir.1982), *cert. denied,* 461 U.S. 956, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983), and *Bolden v. City of Mobile,* No. 75–297–P, slip op. (S.D.Ala. Dec. 12, 1983), two cases cited by plaintiffs for the proposition that out-of-district counsel should be awarded out-of-district rates where opposing counsel are so compensated, are inapposite: in both cases, unlike the case *sub judice,* the defendants paid their out-of-district counsel at hourly rates comparable to the rates sought by plaintiffs, thereby justifying a higher hourly rate for

plaintiffs' counsel. *Chrapliwy,* 670 F.2d at 767; *Bolden,* slip op. at 18.

The court is quite familiar with reasonable hourly rates prevailing in this judicial district for attorney services and observes that such rates fall generally within the $60 to $100 per hour range, depending upon the experience, skill and reputation of the particular attorney involved. We have so noted on numerous occasions. *E.g., Henry,* 603 F.Supp. 666; *Jackson v. Hollowell,* No. GC73–51–WK, slip op. at 9 (N.D. Miss. Mar. 15, 1985); *Johnston v. Lucas,* No. GC82–46–WK–O, slip op. at 13 (N.D. Miss. Jan. 25, 1985); *Litten v. Burke,* No. WC81–168–WK–P, slip op. at 7 (N.D.Miss. Nov. 30, 1984); *Quarles v. St. Clair,* No. GC77–37–K, slip op. at 10 (N.D.Miss. July 2, 1984). Consonant with the experience and reputation of each applying attorney, and after firsthand observation of his or her trial skills and level of participation, we reduce the claimed hourly rates as follows:

| Attorney | Claimed Rate | Allowable Rate |
|---|---|---|
| Parker | $135 | $100 |
| Hanrahan | 100 | 65 |
| Bixler | 100 | 80 |
| McDuff | 75 | 65 |
| Walls | 75 | 65 |

### F. Whether the Fee is Fixed or Contingent

As stated in Mr. Parker's affidavit, "[t]he Lawyers' Committee for Civil Rights Under Law is a private charitable civil rights legal organization which accepts cases involving the constitutional and civil rights of minority and poor persons on a non-fee generating basis." Other counsel, Mr. Walls and Mr. McDuff, to the extent that his time is not attributable to his former association with the Lawyers' Committee, also worked without payment or promise of payment of a fee. As such, payment of any fee to plaintiffs' counsel was contingent first upon plaintiffs' success in the underlying action and, second, upon an award by this court based upon appropriate fee statutes.

### G. Time Limitations

Both evidentiary hearings in the trial court were conducted on an expedited ba-

sis, imposing in many instances severe time limitations upon counsel. Plaintiffs' counsel further represent to the court that this action was treated as a priority case in their office, sometimes pre-empting other work.

## H. The Results Obtained

The court has previously commented upon the results obtained by counsel on behalf of the plaintiff class, *see supra* Parts III, A; IV, A, 2–5. For present purposes it is sufficient to reiterate that plaintiffs' counsel are responsible for, and should be credited with, achieving significant benefits for a broad class of Mississippi citizens by vindicating the right of minority voters to participate meaningfully in congressional elections. Although the ultimate outcome of the case was determined in large part by the 1982 amendment to section 2 of the Voting Rights Act passed during the pendency of this litigation, plaintiffs' efforts to avoid unlawful dilution of black voting strength represent a hard-earned victory.

## I. Experience, Reputation and Ability of the Attorneys

Plaintiffs' counsel possess varying degrees of experience in voting rights litigation, and some of these attorneys, without doubt, enjoy greater reputations in this field than do others. All counsel competently rendered professional services on behalf of their clients. The hourly rate allowed each attorney reflects that attorney's degree of experience. Mr. Parker, however, bore the primary responsibility for development and presentation of plaintiffs' case both at trial and on appeal, and he should be recognized for the excellent quality of his work.

## J. Undesirability of the Case

Inasmuch as the attorneys involved in this case devote their practice almost exclusively to civil rights litigation, this action could hardly be considered "undesirable." Indeed, it is likely that counsel's reputations have been enhanced by their involvement in this case.

## K. Professional Relationship With the Client

This factor is not relevant in this case.

## L. Awards in Similar Cases

Our awards of $65, $80 and $100 per hour in this case fall within the range of prevailing rates in this judicial district and compare favorably with hourly rates recently awarded in other civil rights cases before this court. *See, e.g., Henry,* 603 F.Supp. at 666 (awards of $65, $90 and $100 per hour); *Jackson v. Hollowell,* slip op. at 10 ($75 per hour); *Johnston v. Lucas,* slip op. at 13 ($60 and $75 per hour); *Quarles,* slip op. at 10 ($75 per hour).

## Computation of the "Lodestar" Fee

Under the method adopted by the Fifth Circuit in *Copper Liquor II,* 624 F.2d at 583; *see also Graves v. Barnes,* 700 F.2d at 222; *Copper Liquor III,* 684 F.2d at 1092–93, directing the district court to give "special heed" to the *Johnson* factors of time and labor involved, the customary fee, the results obtained, and the experience, reputation and ability of counsel, in arriving at a "lodestar" figure, which may then be adjusted upward or downward on the basis of other relevant *Johnson* factors, we determine that an appropriate "lodestar" fee in this case is $110,237.50, allocable as follows:

| Attorney | Compensable Hours | Allowable Rate | Lodestar Fee |
|---|---|---|---|
| Parker | 734.65 | $100 | $ 73,465.00 |
| Hanrahan | 181.2 | $ 65 | 11,778.00 |
| Bixler | 164.8 | $ 80 | 13,184.00 |
| McDuff | 115.65 | $ 65 | 7,517.25 |
| Walls | 66.05 | $ 65 | 4,293.25 |
| | | | $110,237.50 |

## V. Should the "Lodestar" fee be enhanced?

We next consider plaintiffs' request for a 100% enhancement of the fee award, applicable to all hours claimed with the exception of 68.7 hours spent by Mr. Parker in preparing attorneys' fees papers and 6.0 hours claimed by Ms. Stewart but disallowed by the court. Plaintiffs main-

tain that the exceptional results obtained, the contingent nature of the case and the delay in payment entitle them to such an across-the-board enhancement. After review of the relevant *Johnson* factors, with particular attention paid to the quality of representation, we conclude that in order to adequately and fairly compensate plaintiffs' counsel an upward adjustment of the lodestar calculation is required on the following basis: Mr. Parker will be awarded a 50% "multiplier" of his fee for 611.35 of the 734.65 hours previously allowed him by the court, excluding from enhancement those hours consumed by travel (56) and in preparation and furtherance of the attorneys' fees request (67.3). *See Graves v. Barnes*, 700 F.2d at 224 (approving exclusion of travel hours from enhancement).

There is no justification in the record for an across-the-board enhancement of the fee award. We single out Mr. Parker's labor for unique treatment because of his special expertise in voting rights litigation and because of his outstanding performance in this court. Noting that the quality of representation is generally subsumed in the reasonable hourly rate, the Supreme Court has held that a district court

> may justify an upward adjustment only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional'.

*Blum v. Stenson*, 465 U.S. at ——, 104 S.Ct. at 1549, 79 L.Ed.2d at 902. We conclude that Mr. Parker's representation falls squarely within this category and that his fee award should therefore be enhanced as described above. In denying a fee enhancement to the other attorneys involved, we observe that they have been adequately compensated for their roles in assisting Mr. Parker in this case.

Plaintiffs are thus entitled to recover reasonable attorneys' fees in the total amount of $140,805.00, allocable as follows:

| Attorney | Compensable Hours | Allowable Rate | Total Compensation |
|---|---|---|---|
| Parker | 734.65 | $100 | $ 73,465.00 |
| 50% Enhancement | 611.35 | $ 50 | 30,567.50 |
| Hanrahan | 181.20 | $ 65 | 11,778.00 |
| Bixler | 164.80 | $ 80 | 13,184.00 |
| McDuff | 115.65 | $ 65 | 7,517.25 |
| Walls | 66.05 | $ 65 | 4,293.25 |
| | | | $140,805.00 |

## VI. Expenses

Plaintiffs also seek an award of $70,102.78 for out-of-pocket litigation expenses. All reasonable expenses that would customarily be billed to a fee-paying client may, of course, be recovered by plaintiffs as prevailing parties under §§ 1973*l* (e) and 1988. *See, e.g., Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir.1983); *Loewen v. Turnipseed*, 505 F.Supp. 512, 517–19 (N.D.Miss.1980). As such, we allow reimbursement as follows:

Paralegal Services

| | |
|---|---|
| Samuel Issacharoff (38.4 hours × $30 per hour) | $ 1,152.00 |
| Jill Rappaport (43.2 hours × $30 per hour) | 1,296.00 |

Lawyers' Committee out-of-pocket litigation expenses

| | |
|---|---|
| Filing fees | 275.10 |
| Transcripts | 590.00 |
| Deposition expenses | 3,120.63 |
| Expert witness fees and expenses | 32,585.61 |
| Copying expenses | 3,050.43 |
| Travel | 7,260.45 |
| Meals and lodging | 3,764.59 |
| Long distance telephone calls | 1,448.69 |
| Postage | 321.29 |
| Express mail service | 915.25 |
| Research work and expenses | 597.44 |
| December 1983 trial transcript | 1,014.00 |
| Documents from State Auditor | 76.10 |

McDuff Expenses

| | |
|---|---|
| Travel, meals, lodging, express mail | 554.90 |
| | $58,022.48 |

Of the 131.1 hours generated by Mr. Issacharoff, we disallow in their entirety 46.8 hours spent preparing *Brooks* plaintiffs' unsuccessful application for stay in conjunction with the first Supreme Court appeal, and 7.5 hours for an unnecessary trip to Greenwood with Mr. Parker. Further, we reduce Mr. Issacharoff's remain-

ing hours (76.8) by one-half, taking into consideration plaintiffs' lack of complete success on the first appeal. *See supra* Part IV, A, 3 (reducing attorney hours similarly expended). We believe that $30 per hour reflects a fair rate of compensation for paralegal (law student) services in this judicial district.

The court disallows $7,183.80 charged for the printing of Supreme Court briefs in both appeals as being noncompensable under Supreme Court Rule 50.3. *See, e.g., Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 957 (1st Cir.1984) (expenses of printing Supreme Court briefs are not properly taxable); *Duncan v. Poythress,* 572 F.Supp. 776, 781 (N.D.Ga.1983) (same). We also deduct $1700 from the total charged for travel and $400 from meals and lodging, as an approximation of the expenses incurred by Messrs. Parker and Issacharoff for their previously disallowed trips to Greenwood in July 1982 (Parker and Issacharoff) and February 1983 (Parker only). Finally, we subtract $8.00 for typing from Mr. McDuff's itemized expenses, attributable to office overhead which is not properly compensable. *Dowdell,* 698 F.2d at 1192. All other expenses incurred are properly chargeable to defendants as reasonable out-of-pocket litigation expenses.

## VII. Conclusion

Finally, we determine that full responsibility for payment of the award of attorneys' fees and expenses made herein must lie solely with the State of Mississippi. Both plaintiffs and state defendants have urged the court to assess partial liability, in varying degrees, against the Republican defendants. The question is, we think, a close one, particularly in light of the multiplication of pleadings and legal process engendered by the Republican defendants; however, in the final analysis, we find that the Republican defendants were joined in this action and participated at all times as agents of the state. As such, the state must assume full liability for payment of plaintiffs' attorneys' fees and expenses, including that portion of the

total which was spent opposing Republican efforts. *See supra* note 4.

To summarize, we today conclude that the *Brooks* plaintiffs, as prevailing parties in this voting rights action, are entitled to recover from the state defendants, acting in their official capacities, the sum of $198,-827.48, representing an award of attorneys' fees in the amount of $140,805.00 and litigation expenses in the amount of $58,-022.48.

Let an order issue accordingly.